## UTSEY v. CHARLESTON, &c., R. R. COMPANY.

1. CHANGE OF VENUE—CHAMBERS.—An order directing a change of venue in a civil action, for the convenience of witnesses. may be granted by a Circuit Judge at chambers.

2. IBID.—JURY TRIAL.—The order in this case was granted in terms, upon the statutory authority (Code, § 147), to change the venue when "the conveniences of witnesses and the ends of justice would be promoted by the change." And it would seem that the ends of justice are subserved when a cause is submitted to a jury of the same vicinage as the witnesses.

3. IBID.—CONSTITUTIONAL GRANT—LEGISLATIVE POWER.—The constitutional provision (art. V., sec. 2), requiring the legislature "to pass the necessary laws for the change of venue in all cases, civil and criminal, * * * upon a proper showing, supported by affidavit, that a fair and impartial trial cannot be had in the county where such trial or prosecution was commenced," was not an exhaustive grant of legislative power over change of venue; and, therefore, the statutory enactment, further authorizing such a change, "when the convenience of witnesses and the ends of justice may be promoted by the change" (Code, § 147, ¶ 3), was constitutional and valid under the full grant of legislative power to the General Assembly.

4. IBID.—JURY TRIAL.—The provision, "that the right of trial by jury shall remain inviolate," is not violated by substituting one county for another as the place of trial.

5. IBID.—CONSTITUTION— LEGISLATIVE POWER.—In the light of the prior law as to the extent of the power of the several courts of this State to direct a change of venue, it would seem that the legislature was vested with full power over the subject by the Constitution of 1868, wherein the legislature was directed to provide for a codification of the laws of this State, and by the practice of our courts.

Before ALDRICH, J., Colleton, May, 1891.

Action by W. B. Utsey against the Charleston, Sumter and Northern Railroad Company, to recover damages for the unlawful discharge of plaintiff by defendant from its employ, commenced March 28, 1891. Defendant moved for a change of venue on the following papers:

NOTICE OF MOTION.—You will please take notice that the defendant will move the honorable James Aldrich, at his chambers in Aiken, S. C., on the 5th day of May, 1891, at 12 o'clock meridian of said day, or as soon thereafter as counsel can be heard, for an order to change the place of trial of this action from the Court of Common Pleas for the County of Colleton to the Court of Common Pleas in and for the County of Sumter, in the State above written. Said motion will be made upon the pleadings herein, and upon the affidavit of J. H. Averill, Esq., the general manager of the Charleston, Sumter and Northern Railroad Company, a copy of which is herewith served upon you, and upon the demand to change the place of trial, upon and for the ground that the convenience of witnesses and the ends of justice will be thereby promoted.

AFFIDAVIT.—Personally appeared before me, the subscribing officer, Col. J. H. Averill, who, after being duly sworn, says:

1. That he is the general manager of the Charleston, Sumter and Northern Railroad Company.

2. That said railroad lies in the Counties of Marlboro, Darlington, Sumter, Orangeburg, Colleton, Clarendon, and Berkeley, a very small portion, to wit: the southern terminus, being in the County of Colleton, and that the central and headquarters of the said railroad is located at Sumter, in the County of Sumter.

3. That this action has been commenced against deponent's company in the County of Colleton, and that the summons and complaint herein were served on the first day of April, 1891.

4. That he has fully and fairly stated the case in this cause to C. S. Nettles, Esq., general counsel of the Charleston, Sumter and Northern Railroad Company, who resides in the city of Darlington, in the State above written, and that, after such statement, he is by him advised, and fully believes, that the said company has a good and substantial defence on the merits of this action.

5. That I have fully and fairly stated to my counsel the facts which I expect to prove by each and every one of the following witnesses, namely: J. M. Brand, C. L. Martin, B. K. DeLorme, H. Schesrin, A. White, A. S. Brown, H. Frank Wilson, Dr. J. H. Mood, Frank O'Donnell, and each and every one of them is a material and necessary witness for the defence in the trial of this cause, as I am advised by my said counsel, and fully believe; and without the testimony of each and every one of the said witnesses I cannot safely proceed to the trial of this cause, as I am also advised by my said counsel, and fully believe; that each and every one of the said witnesses reside in the city of Sumter, in the County of Sumter and State above written; and that the said witnesses, J. M. Brand, C. L. Martin, and B. K. DeLorme, are employees of the said railroad company, engaged in the company's business in the said city of Sumter.

6. The facts which I expect to prove by the said witnesses are as follows: By J. M. Brand, C. L. Martin, and B. K. DeLorme, that twice, during March, W. B. Utsey, the plaintiff in this action, interfered with matters pertaining strictly to the province of the general manager; that he was insubordinate and impertinent to the general manager; and that he was warned that if he did so again he would have to leave the service of the company; and that in April, 1890, upon the occasion of an excursion, which was arranged to run from Sumter to Pregnalls and return, for the benefit of the merchants of Sumter, the plaintiff herein disobeyed positive instructions

which were given him by I. W. Fowler, who was then the general manager of the road.

By the witnesses, H. Schesrin, A. White, A. S. Brown, H. Frank Wilson, Dr. J. A. Mood, and Frank O'Donnell, that, during April, 1890, upon the occasion of the excursion herein above mentioned, the plaintiff herein became intoxicated, was guilty of disobedience to the orders of the general manager of the road, whom he cursed and assaulted, to wit: On the return trip, some party interfered with the running of the train by constantly pulling the bell cord, and when Col. Fowler, the general manager, attempted to get into one of the coaches to ascertain the cause of the disturbance, the plaintiff grabbed him by the arm and clothing, and prevented him from entering the car. Col. Fowler ordered him to take his hands off, and, also, to leave the train; that, after a space of a few minutes and a good deal of abuse, he did remove his hands from the person of Col. Fowler, but did not leave the train as he was ordered to do. That when the train arrived at a point about fifteen miles from Sumter, a man jumped out of a car window; the train was running about twenty miles an hour; the conductor stopped the train, and reported to Col. Fowler the fact that a man had jumped out of a window. Col. Fowler started with others to pick up the body, which, fortunately, had received no injury, when the plaintiff jumped off the rear platform, and attempted to stop him; that Col. Fowler said to him, "Mr. Utsey, I wish you would not interfere with my business any more," and to which he replied, "You can go to hell," and left him.

7. That, as deponent is informed and believes, such contract as was made between the plaintiff and the defendant was entered into in the city of Sumter, and that all the facts and circumstances relating thereto, or to his discharge from the service of this company, or to the cause of such discharge, occurred in the County of Sumter.

8. That the town of Walterboro, which is the county seat of Colleton County, is situate at considerable distance from the line of deponent's railway, and is very difficult to be reached; that if deponent and his witnesses should be required to attend

trial at Walterboro, they will be compelled to go to a distant destination, traveling over two different systems of railway, a distance of nearly two hundred miles, to their great inconvenience and expense, and that the convenience of witnesses, and the ends of justice, would be greatly promoted by changing the place of trial of this action from the County of Colleton to the County of Sumter.

The order of the Circuit Judge, passed at his chambers in Aiken, S. C., on May 5, 1891, was as follows:

A motion in this cause having been made before me at chambers, in behalf of the defendant, to change the place of trial from the County of Colleton to the County of Sumter, upon the notice of the motion, and after hearing read the affidavit of J. H. Averill, Esq., the general manager of C., S. & N. R. R., by which it is made to appear that the defendant has nine material witnesses, who reside in the city of Sumter, and the plaintiff having made no showing that he has material witnesses resident at Walterboro, nor denial of the facts stated in the affidavit of J. H. Averill, but resting this application solely upon the ground that the judge at chambers has no right to grant the order asked for; and after hearing argument for the motion by C. S. Nettles, Esq., and against by Mr. Croft on behalf of Howell, Murphy & Farrow,

It is ordered, that the place of trial of this action be, and is hereby, changed from the Court of Common Pleas for the County of Colleton to the Court of Common Pleas for the County of Sumter, upon and for the reason that the convenience of the witnesses for the defendant and the ends of justice will be thereby promoted. Further ordered, that this order be filed with the clerk of the court for the County of Colleton, and that all further proceedings herein be had in the Court of Common Pleas for the County of Sumter. And it is further ordered, that all papers in the cause shall be transferred accordingly.

Plaintiff appealed.

*Messrs. Howell, Murphy & Farrow,* for appellant.

*Mr. Knox Livingston,* contra.

March 13, 1893. The opinion of the court was delivered by

Mr. JUSTICE POPE. After issue joined in an action for damages arising from an alleged breach of contract, a motion was made, after due notice by defendant, to change the place of trial from the Court of Common Pleas for Colleton County to that of Sumter County, on the ground that the convenience of witnesses and the ends of justice would be thereby subserved. The notice of motion, affidavit accompanying the same, and the order of his honor, Judge Aldrich, who heard the same at chambers in Aiken, will be set out in the report of the cause. The plaintiff now seeks to reverse the order referred to, and, as his grounds therefor, complains: 1. Because his honor, Judge Aldrich, had no jurisdiction at chambers to grant the order. 2.. Because the notice of application for the order was insufficient, and did not confer jurisdiction to grant such order. 3. Because the affidavit did not show, nor did the judge find, that the convenience of witnesses and the ends of justice would be promoted by changing of the place of trial. 4. Because the application for a change of venue was not supported by affidavits, showing that a fair and impartial trial could not be had in the County of Colleton.

As was stated in the able argument of appellant, the appeal involves, substantially, these propositions: *First.* Has a Circuit Judge power, at chambers, to make an order changing the venue in a case pending in the Circuit Court? *Second.* If he has such power, and it is a matter resting in his discretion, is it not a judicial discretion, and, if so, does the affidavit authorize the exercise of the power? *Third.* Can the venue be changed by an order by either the court in term time or a judge sitting in chambers, except for the cause provided in section 2, article V., of the Constitution of this State?

*First.* In order to expedite the transaction of the business of parties before the courts, the legislature has wisely confided very large powers to the Circuit Judges at chambers.

1. This may be the more readily appreciated when we recall the power of Circuit Judges at chambers to appoint

receivers—always a most delicate and responsible act by a judge. So, too, in cases of partition. In some few instances, our law-makers have restricted this power. Such, for instance, as granting new trials, or a change of venue, because a fair and impartial trial cannot be had in the county where the action or prosecution was commenced. An examination of our law will discover that the instances of this restriction of power, to entertain these questions of the latter class by the judges at chambers, are rare and sharply defined. The power to hear applications for orders, so that causes may be properly tried before juries, seems very clearly to belong to the class properly cognizable by a judge at chambers. Our Code is the direct result of the provision of our State Constitution, art. V., § 3, and under this section the changes in the practice in our courts have been wrought. In *Lebeschultz* v. *Magrath*, 9 S. C., 276, this court held that questions of change of venue, under section 149 (now 147) of the Code, belonged to those of practice. Inasmuch as every application for an order is a motion, and all motions, save those for a new trial and a change of venue, under article V., section 2, of the State Constitution, may be heard by a judge sitting in chambers, it would seem that the order of Judge Aldrich was correct, unless the constitutional question submitted by the appellant should be sustained.

*Second.* We agree with the appellant, that the Circuit Judge, in granting the order here in question, should be controlled in his judicial discretion by the words of the statute, that "the convenience of witnesses *and* the ends of justice would be promoted by the change." But we are not able to see that the Circuit Judge has not observed both requirements here. Indeed, if we may be pardoned the observation, it seems to us that the ends of justice are subserved when the testimony of nine witnesses, all living in Sumter County, are, by this very order, submitted to a jury of Sumter County. The very object of our jury system, in requiring jurors from the vicinage to pass upon the credibility of witnesses, is the promotion of the ends of justice. It could never have been the intention of the framers of our system of laws, by confiding the trial of causes to the county where the defendant lives,

to give him a jury partial to him rather than to the plaintiff; the intention was to secure a fair and impartial trial for the defendant, by having the trial where a jury from the vicinage should pass upon the testimony adduced.

*Third.* The appellant assails the constitutionality of the act of our legislature, which reads as follows: "SEC. 147. The court may change the place of trial in the following cases: * * * 3. When the convenience of witnesses and the ends of justice may be promoted by the change." Code of Civil Procedure, page 44. It is urged that the Constitution of this State, in section 2 of article V., when it provides that "it shall be the duty of the General Assembly to pass the necessary laws for the change of venue in all cases, civil and criminal, over which the Circuit Courts have original jurisdiction, upon a proper showing, supported by affidavit, that a fair and impartial trial cannot be had in the county where such trial or prosecution was commenced," has laid down not the method which must be embodied by the General Assembly in the law contemplated, but that such provision is exhaustive, and the General Assembly cannot go beyond the cause of change of venue therein specified.

This presents a grave question. A different view has been entertained by the legislature and the courts of this State for nearly a quarter of a century. This latter fact cannot, and should not, control us in refusing a support to the legislation now assailed, if it contravenes the organic law of this commonwealth; for, while it is true, as was said by Mr. Justice McGowan, in *Pelzer, Rodgers & Co.* v. *Campbell & Co.,* 15 S. C., 592, "it is no small matter to declare an act of the legislature unconstitutional; the legislature is the law-making power of the State upon all subjects not prohibited by the Constitution, every part of which should, if possible, be so construed as to allow full force to section 1 of article III., which vests the full legislative power of the State in the General Assembly"—yet it must always be remembered that the provisions of the State Constitution control the executive, the legislative, and the judicial departments of our government, and a citizen whose rights are impinged by the action of any one of those

departments, in setting at defiance, or in disregarding the limits to the power of one of them as fixed by the Constitution, as indicated by their conduct prejudicial to his just rights, is entitled to the protection of this court from such unconstitutional conduct. Guided by these views, let us patiently investigate these matters.

It is important to remember that, in construing the provisions of the Constitution of a State, as opposed to that of the Federal Constitution, when a statute of the State is in question, "a State Constitution proceeds on the idea that all legislative functions are in the legislature (Bish. Wr. L., sec. 92), and, hence, the legislature may exercise all the powers which are properly legislative, and which are not taken away by our own or by the Federal Constitution." *Sharpless* v. *Philadelphia*, 21 Pa. St., 147. There is no provision in our State Constitution that restricts the power of our General Assembly in enacting any laws for a change of venue, unless section 2, article V., does so. What does the Constitution, in section 2 of article V., provide? Its language is plain and unmistakable. It directs and requires the General Assembly to enact laws to provide a change of venue, in either a civil or criminal cause pending in the Circuit Courts of the State, whenever it appears, by affidavits, that a fair trial cannot be had in the county where the action or prosecution was commenced.

The appellant contends that the doctrine, "*expressio unius, exclusio alterius,*" prevents the legislature from providing by law for the change of venue for any other cause than that set forth in section 2 of article V., viz: when a fair trial cannot be had in the county where the action or prosecution has begun; in other words, that this provision is an exhaustion of all or any other legislative power as to changes of venue. It is very clear that the legislature, in enacting the laws as required by this section of the Constitution, is limited to the action therein specified. So we will find our General Assembly so construed this section; for in September, 1868, a few months after the Constitution was ratified, it enacted a law embodying the requirements of this section (14 Stat., 84), and that law still remains amongst our statutes. The case of *Duncan* v. *Barnett*, 11 S. C.,

333, is an apt illustration of this principle; for when the State Constitution, in article II., at section 32, enumerated the articles of personal property that should be exempt from levy and sale for debt, and afterwards the legislature added another kind of property to such articles so exempted, this court very properly held that such attempted addition by the legislature was null and void, the grant of power to the legislature, in this direction, being exhausted. But does it necessarily follow, that when the Constitution has specified one duty in a certain direction, that, therefore, the General Assembly cannot legislate in another direction? The instance in the State of Pennsylvania furnishes a good illustration. There the legislature was required to pass a law that would provide an education to all poor children free of charge. The legislature not only did this, but also provided for the education of the children of rich parents free of charge, and this legislation was sustained. *Commonwealth* v. *Hartman,* 17 Pa. St., 118.

We cannot regard the section 2 of article V. as denying to the legislature the right to enact any other law than that required by that section, on the general subject of a change of venue. We reach this conclusion, from the language there employed, from the construction given it by the legislature immediately after its ratification by the people, by the acquiescence of our courts, but especially from the principle of law recognized by this court in the case of *Pelzer, Rodgers & Co.* v. *Campbell,* 15 S. C., 592: "Implied limitations of legislative power are only admissible when the implication is necessary, as where language conveying a particular intent cannot have its proper force without such implication." The language here employed in the Constitution makes no reference, directly or indirectly, to any other cause for change of *venue* except in the case of the inability to obtain a fair trial in the county where the action or prosecution was commenced. The legislature in 1868, as before stated, carried this intent of the framers of the Constitution into effect. 14 Stat., 84. Also the provision of the Code now brought into question was enacted 1 March, 1870, as section 149 of that instrument. The courts of this State have enforced the section of the Code now in question.

*Gower* v. *Thomson*, 6 S. C., 313; *Parker & Co.* v. *Grimes & Co.*, 9 *Id.*, 284.

The doctrine of implied limitations of the power of legislation by any provision of the Constitution should be clear and necessary. We have hereinbefore treated of the general doctrine sufficiently. But it is contended by the appellant that, under the decisions of this court in *Pelzer, Rodgers & Co.* v. *Campbell, supra*, wherein it is held: "It is true that, under certain circumstances, the power to legislate upon a subject may be taken away by a provision of the Constitution simply affirmative, as well as by express words, as where the provision is of such a nature that its purpose would be frustrated by further legislation on the subject, which occurs generally in reference to modes of procedure, and in matter enumerated," when the provision of section 11 of article I., "The right of trial by jury shall remain inviolate," is considered in connection with section 2 of article V., it must be held that said section 2 of article V. is a proviso added to said section 11 of article I. It is contended, that thus it is made to appear by clear implication, that only can the right to a jury trial be interfered with, when it is made to appear by affidavit that a fair trial cannot be had in the county where the action or prosecution was commenced, and, therefore, as the section of the Code (section 147) seeks to add another class of cases where the right of trial by jury may be affected, it is unconstitutional.

In answer to so much of the argument of appellant as is confined within this limit, we might say, in the first place, that we are by no means satisfied that the right to a jury trial, or, as stated in the language of the Constitution, "The right of trial by jury shall remain inviolate," is at all affected by substituting one county for another, where such trial may be had. This question is somewhat involved in the cases of *Cregier* v. *Bunton*, 2 Strob., 487; *State* v. *Boatwright*, 10 Rich., 410; *State* v. *Williams*, 35 S. C., 345. It may be that the provisions of the law, which secure a tribunal consisting of a jury of twelve good and lawful men, drawn from the county where the trial is had, is all that is contemplated by the Constitution. And, secondly, it seems to us that section 3 of article V.,

The exceptions must all be overruled.   It is the judgment of
this court, that the judgment of the Circuit Court be affirmed.