Mr. Justice Thacher
delivered the opinion of the court.
The bill in this suit was dismissed in the superior court of chancery, upon the demurrer of the appellees. The bill charges that in 1832, Horace and John M. Carpenter formed a commercial and agricultural copartnership, under the name and style of H. Carpenter & Co., which was to continue during their pleasure; that the copartnership continued until April 27, 1836, at which time Horace Carpenter deceased; that, after his death, the copartnership was carried on by John M. Carpenter, as surviving partner, for the purpose of liquidating and settling the business of the firm, which was then largely indebted; that *301 John M. Carpenter, in pursuit of his design of settling up the business of the firm, in 1838 and 1839, obtained large discounts and loans of money from the bank, in his capacity of surviving partner, upon notes of the firm of H. Carpenter & Co.; that in 1840, the bank, being anxious to obtain security for their loans, which had then reached the amount of $15,000, procured from John M. Carpenter a note in its favor, at twelve months, signed H. Carpenter & Co., per John M. Carpenter, surviving partner, to take up the notes previously given, which note was secured by a mortgage on the property of the firm of H. Carpenter & Co., which was executed by John M. Carpenter, as the surviving partner of H. Carpenter & Co., for the copart-nership ; that Horace Carpenter, in his lifetime, made and published his last will and testament, in which he appointed John M. Carpenter, and his own wife, Martha, since intermarried with Thomas W. Baugh, his executor and executrix, and who both qualified in those capacities. The will originally appointed three persons as executors, and it also provides that the executors shall “ exercise their powers jointly, or with a concurrence of a majority.”
The ground assumed in the bill is, that the note and mortgage were executed by John M. Carpenter, as surviving partner and executor. As to his act in the first named capacity, without regard to any considerations of extraordinary powers added to that capacity from articles of copartnership, or the will, it is sufficient to say, without multiplying authorities, that it is the admitted doctrine that the dissolution of the partnership disables any one of the partners from contracting new debts, or buying, or selling, or pledging goods on account of the firm. Story on Part. 272. The loans and discounts procured by John M. Carpenter, in 1838 and 1839, were new contracts, and their liquidation by note and mortgage, in 1840, was also a new contract. The fact that the money thus procured was used in discharge of the debts of the partnership, does not change the nature of the contract by which that money was procured. It has been held that where one member of a firm executes a note after the dissolution of the partnership, it is a discharge of the *302 partnership, and binds only the party executing the instrument. 2 Humph. 529 ; 6 lb. 85. It is true that the legal title to the debts and choses in action, belonging to a copartnership, rest in a surviving partner, and that he may appropriate the partnership property to the payment of the debts of the firm in any preferred manner which he may deem fit, and this without the assent of the personal representatives of the deceased partner; but this is always upon the existing contracts and debts of the partnership, and not upon new contracts made by himself. It should here be observed that there was no power contained in the copartnership articles vested in the survivor, and no provision in contemplation of that event.
The note made in 1840, and the mortgage, were made and executed in this form: “ H. Carpenter & Co., per John M. Carpenter, surviving partner.” In this shape, it was an attempt, by one member of a firm, to execute a note after the dissolution of the partnership. The effect would only be to bind the party making the note.
The death of Horace Carpenter put an end to the partnership from the time of the occurrence of that event, and also put an end to the power and authority of the surviving partners to carry on for the future, the partnership trade or business, or to engage in new transactions, contracts, or liabilities, on account thereof. Story on Part. 490. What was there in the will that changed this settled rule respecting partnerships'? The will, it is insisted, gave ample power to continue the business, and, in its own language, “ to mortgage and hypothecate portions of the estate, in order to inspire credit and procure facilities for the concern, and also to financier, raise money, and to do all other acts necessary in continuing and settling up the business.” But, upon whom were these powers bestowed?— for it will be remembered that the loans and discounts of 1838 and 1839, and the note and mortgage in liquidation of those loans and discounts, were procured, made and executed, by John M. Carpenter alone, and in his capacity of surviving partner. The will originally nominated and appointed three executors to exercise the powers granted thereby, but it also *303 provided that those executors should “ exercise their powers jointly, or with a concurrence of a majority.” The codicil of the will, which reduced the number of executors from three to two made no alteration in the mode in which they should act, unless from necessity it did so in respect to the requisitions of a concurrence of a majority. The executors, by the terms of the will, must still act “jointly” in the exercise of their powers. It is very possible, that even under this restriction, the simple and obvious offices necessary to be performed in the settlement of the estate, and perhaps those of a similar grade in settling up the affairs of the partnership, such as paying and collecting debts due to the partnership, applying the partnership funds and effects to the discharge of its own debts, adjusting and settling the unliquidated debts due to the partnership, receiving any property belonging to the partnership, and making due acquittances, discharges, receipts and acknowledgments of such acts, might have been safely undertaken and fulfilled by either of the executors solely. But the will contemplated acts of greater discretion and importance, being nothing short of a continuance of the business upon the footing it had been conducted in the lifetime of the testator; during which, negotiations and speculations were to be allowed according to the joint ability and sagacity of the executors. In the discharge of the ordinary duties and powers of administrators, or executors, where several are nominated in a will, the act of one will be sufficient and binding on his co-executors ; but in the case of a will where special acts, out of the common course of duty of such officers are required, and those ‘ acts are confided to be performed jointly by several executors, if the act of one should be considered sufficient, it might present the extraordinary case of a minority of the executors overruling the majority in a matter dependent upon judgment and discretion. In these acts, the executor is rather engaged in the exercise of a power than in performance of the ordinary duties of an executor.
We give no opinion as to the effect of the mortgage upon the individual interest of John M. Carpenter.
The decree must be affirmed.