## Daily's Appeal.

It was not error in the Orphans' Court to set aside a sale made under a
testamentary power, although for a full price, where it appeared that there
had not been a due execution of the power of sale by both executors.

October 30th 1878.    Before AGNEW, C. J., MERCUR, GORDON,
PAXSON and TRUNKEY, JJ.  SHARSWOOD and WOODWARD, JJ.,
absent.

Appeal from the decree of the Orphans' Court of *Westmoreland
county:* Of October and November Term 1877, No. 129.

Appeal of Jeremiah Daily from the decree of the court setting
aside a sale made to him by the executors of Peter Soxman,
deceased.

At the time of his death Peter Soxman was seised, inter alia, of
a farm of seventy-eight acres, underlaid with coal, in Derry town-
ship, Westmoreland county. By his last will and testament he pro-
vided, inter alia, in these words: "I will and direct that the
executors of this, my last will and testament, have power to sell
any of my property, at such time or times, in such quantities, and
in such manner as to them may seem best, and of greatest benefit
to my heirs; provided, however, if any property is sold on credit,
the amount thereof shall be secured in such manner as is usual in
like cases, to insure its full and punctual payment."

Pursuant to this grant of power, on March 27th 1875, the
executors of Soxman entered into an agreement, whereby the said
farm of seventy-eight acres was sold and conveyed to Jeremiah
Daily, the appellant, for the price of $200 per acre, to be paid,
$1000 in cash on the execution of the agreement, and the balance
upon the attainment of their majority by the minor children of the
testator.   Interest on the deferred payments was to be paid annu-
ally, and principal and interest were to be secured by the bond of
the purchaser, and a mortgage on the property sold, as also on other
property owned by him.

This agreement was signed by only one of the executors, but it
was alleged that it was assented to by the other. This agreement
Daily put upon record. He paid the $1000 of hand-money, and
went into possession of the property. The bond and mortgage
required by the agreement were duly tendered to the executors,

and interest was also tendered on the deferred payments, as and when it became due. No deed, however, was made by the executors to the purchaser. On the contrary they executed and delivered a deed on May 1st 1875 to Mathias Soxman, Jr., a son of decedent, for the same land sold to Daily, for the sum of $175 per acre.

On the 12th of June 1875 Henry Omsler, guardian of the minor children of Peter Soxman, deceased, presented a petition to the Orphans' Court, praying for a rule on Mathias Soxman, Sr., and Sebastian Bear, executors of Peter Soxman, deceased, and on Mathias Soxman, Jr., to show cause why this sale by the former to the latter should not be set aside.

On October 2d 1875 a rule was granted on respondents to plead, answer or demur on ten days' notice, and on November 13th 1875 a commissioner was appointed to take testimony, which was filed February 9th 1876. On March 24th 1876 a rule was granted on Daily to show cause why the sale to him should not be set aside, and on May 13th 1876 the following order was made by the court :—

 "And now, to wit, May 13th 1876, it is ordered that the sale made by the executors of Peter Soxman, deceased, of the premises described in the petition, be avoided and set aside and the deed therefor and the securities given by the purchaser for the purchase-money thereof be cancelled and annulled, and as to the sale of the aforesaid premises negotiated with J. Daily by Soxman, Sr., one of the executors of said decedent, at the price of $200 per acre, it is ordered that the same be confirmed and approved, and the executors of Peter Soxman, deceased, to wit, Mathias Soxman, Sr., and Sebastian Bear, execute and consummate such sale by due and proper conveyance upon receipt of the money and securities contracted to be given therefor, unless within twenty days from this date a bond with sufficient sureties approved by the court in the sum of $5000, conditioned that upon a re-sale of the premises on such terms and at such times as shall hereafter be ordered by the court, there would be realized the sum of $800 over and above the price agreed to be paid by J. Daily, be filed, in which event the said sale as aforesaid agreed to be made to the said Jeremiah Daily shall be set aside, and a sale ordered at public outcry, at such times and upon such terms as shall hereafter be directed. Order as to costs suspended."

On June 24th 1876 the following order was made :—

 "The foregoing decree amended by adding after the words "over and above the price agreed to be paid by Jeremiah Daily," the words "inclusive of accrued interest from the date and as provided in the article 29th March 1875, between M. Soxman, Sr. and Jeremiah Daily," and the time for filing the bond is enlarged ten

days from this date and to be approved before one of the judges on notice."

On March 21st 1877, the executors filed a petition reciting the decree of May 13th 1876, and praying for an order to sell the real estate of decedent, and on the same day the court ordered the executors to expose the property to public sale, the terms to be $1500, to be paid on confirmation of the sale, and the residue in three equal payments when the minor children of decedent respectively attained the age of twenty-one years, interest on said payments to be paid annually, and to be secured by bond and mortgage on the real estate sold, and also on other unencumbered property of the value of $10,000.

On April 21st 1877, Daily appealed from the decree of the 13th of May 1876, setting aside the sale by the executors to him, and also from the decree of March 21st 1877, directing a sale of the property.

On June 11th 1877 the executors reported that they had, in pursuance of the order of court on the 21st day of May 1877, exposed the real estate therein mentioned to public sale, after having given due notice thereof, and having received no higher bid than $150 per acre for same, and Mathias Soxman, Jr., in accordance with the condition of his bond as directed by court, having offered for the same the sum of $20,381.48, and to give the security required in the said order, they, the said executors, sold the said real estate to him, and prayed the court to confirm the sale and direct them to execute and deliver to him a deed for the same upon his compliance with the terms of said sale.

On the 11th June 1877, " the foregoing return being presented, the court decree that the sale be confirmed, and that the executors within named be authorized and empowered to execute and deliver to Mathias Soxman, Jr., a deed ·for the premises upon his compliance with the terms of sale, and Mathias Soxman, Jr., the purchaser, to the better securing the payment of the purchase-money, offers a mortgage on thirty acres of land belonging to him, in addition to the usual mortgage on the premises sold, and the same is hereby approved, unless exceptions be filed within six days.

Exceptions were filed on June 30th 1877 ; and the court ordered that upon the return of sale being signed by the executors, the order of confirmation should be suspended until the determination of this appeal to the Supreme Court.

*Hampton & Dalzell*, for appellant.—Mathias Soxman, Sr., by writing, under seal, sold and conveyed the land in controversy to the appellant. So far as the record shows, it is not disputed that this sale was assented to by the other executor. The testimony taken in the case shows this, and the first order of the court

assumes it. This, then, was a good execution of the power in the will. A power to sell, unshackled by particular directions for its execution, may be executed by parol sale.

A parol sale, under such power, by two of three executors, subsequently ratified by the third, is valid: Silverthorne *v.* Mc-Kinster, 2 Jones 69.

Daily was not made a party to any proceeding whereby his title could be divested. The proceeding in the court below was between the guardian and the executors. It does not appear at whose instance the rule on Daily was granted, and it was wholly irregular. The proceedings in the Orphans' Court should be by petition and answer, not by rule to show cause: Seffy's Appeal, 26 P. F. Smith 94.

Whence then did the court derive jurisdiction? Concede that the Orphans' Court may review a sale made under a square power to the executors by name in a will, can it review such sale unless some cause is shown whereby the court acquires jurisdiction? Must there not be alleged fraud, *mala fides*, inadequacy of price, or some other equitable ground for subordinating the discretion that the testator gave to his executors to the control of the court? Can the Orphans' Court, *ex mero motu*, and without cause, set aside an executed contract for the making of which its prior authority and approval was not necessary?

*Edgar Cowan*, for appellees.—Daily had no title, equitable or otherwise, and supposing he had a title, the court had the right to exercise the judgment they did in regard to the estate.

The title of Daily stands simply upon his agreement with one of the executors, and the payment of the handsel. This is clearly distinguishable from the case of Silverthorne *v.* McKinster, 2 Jones 69.

The court had jurisdiction of the subject-matter of the testamentary trust, had all the parties in interest, executors, guardian, and rival purchasers before it, and had heard their allegations, and under such circumstances they had clearly the power to set aside a sale and order a resale of real estate made under a testamentary power: Dundas's Appeal, 14 P. F. Smith 331.

The judgment of the Supreme Court was entered November 4th 1878,

PER CURIAM.—If the contract of Jeremiah Daily had been made by both of the executors under the power in the will of Peter Soxman, deceased, or had it been executed by their deed, the Orphans' Court would scarcely have been justified in setting it aside. There is no doubt of the jurisdiction of the Orphans' Court over testamentary powers, as held in Dundas's Appeal, 14 P. F. Smith 325. But when the power is committed to the executors by name or descrip-

[Daily's Appeal.]

tion, they exercise it by virtue of the will of the testator, and not by a power acquired under the order of the Orphans' Court. In such a case, therefore, there must be abuse or great improvidence in the exercise of the power to justify the interference of the court by setting aside the act of the executors. In this case, however, the sale was invalid because of a want of a due execution of the power of sale by both executors; and therefore, though for a full price, we cannot say the Orphans' Court erred in setting aside the sale. Whether the other executor hereby assented to the sale is a disputed fact, and there is no evidence on the record to support.

Decree affirmed, with costs to be paid by the appellant, and the appeal is dismissed.