GERTRUDE M. HIGHLAND *et al. v.* EMPIRE NATIONAL BANK OF CLARKSBURG *et al.*

(No. 7669)

Submitted November 9, 1933.   Decided December 16, 1933.

MAXWELL, PRESIDENT, dissenting.

*Sperry & Snider, H. Rudkin Taylor, Steptoè & Johnson, Stanley C. Morris,* and *James M. Guiher,* for appellants.

*E. A. Bowers, S. A. Powell* and *L. A. Henderson,* for appellees.

KENNA, JUDGE:

Virgil L. Highland died August 9, 1930.   By his last

474

will and testament dated March 20, 1917, taken in conjunction with a codicil dated August 9, 1930, he named the Empire National Bank, Melvin G. Sperry and Cecil B. Highland as his executors. At the time of his death, Virgil L. Highland was one of two voting trustees of the common stock of Clarksburg Publishing Company under the terms of an agreement dated the 30th day of June, 1927. Under the terms of this agreement, the power to name a trustee in case of vacancy in that office brought about by the death, resignation, etc., of Virgil L. Highland devolved upon the owners of a majority of the ''Class A'' common stock of the company. A majority of that stock passed to the executors of Virgil L. Highland under the terms of the will. The executors named in the will qualified on August 21, 1930. On September 9, 1932, a suit was brought in Harrison County by exactly the same plaintiffs against the Empire National Bank and Melvin G. Sperry in their representative capacities, for the purpose of having a trustee appointed to take the place of Virgil L. Highland under the voting trust agreement just mentioned. Up to that time no successor to Virgil L. Highland had been named. On September 13th, Sperry and the bank, by writing, designated Sperry as trustee in the voting trust agreement to take the place of Virgil L. Highland. This writing was dated August 10, 1932. On September 17, 1932, an injunction issued in the Harrison County suit restraining the defendants from recognizing Sperry as such voting trustee. On November 15, 1932, the judge of the circuit court of Harrison County having declared himself disqualified to hear the cause on account of relationship within the degrees prohibited by statute to a person holding stock in the defendant corporation, the cause pending in the circuit court of Harrison County was dismissed. Immediately, a like suit was brought in Ritchie County, with added defendants, and a temporary injunction substantially the same as that having theretofore been awarded in Harrison County, was entered in that circuit court. The bill was filed by order of court November 15, 1932, and process made returnable to December Rules, when it was returned, having been executed on the bank, Sperry and J. Hornor Davis. The answer of the bank and Sperry was filed at December Rules, and there was a decree *nisi* as to the defendant

served and not answering. On November 19, 1932, the bank Deison, Morrison, Geppert and Powell along with Sperry appeared pursuant to notice and moved to dissolve the injunction. This motion was continued to December 19, 1932. On that day, it was again continued to January 5, 1933, on account of the illness of Mr. Steptoe of counsel for defendants. At January Rules, 1933, the bill of complaint was taken for confessed as to Deison, Davis, and Morrison and the cause was set for hearing. On January 5, 1933, the bank appeared, along with Sperry, and moved that the court act upon the motion to dissolve the injunction. This the court refused. On February 21, 1933, the demurrer of Morrison, Geppert and Powell and of Sperry and the bank in their representative capacities was filed. On May 19, 1933, the court overruled the motion to dissolve the injunction, overruled all of the demurrers of the defendants and on the motion of the plaintiffs to submit the cause on the merits, after requesting the defendants to assign reasons for not doing so, if any reasons they had, proceeded to find for the plaintiffs on the merits of the cause, and to enter a final decree nullifying the paper purporting to make Sperry the voting trustee, appointing Anthony F. McCue as such in the room and stead of Virgil L. Highland, perpetuating the injunction, and retaining the cause upon the docket for such proceedings as might prove necessary. From this decree, certain of the defendants below prosecute this appeal.

The first assignment of error is that the circuit court of Ritchie County was without jurisdiction to entertain the proceeding brought there. The circuit judge in Harrison County had declared himself disqualified because he was related to one of the stockholders of the Empire National Bank, a party to the suit, within the degrees prohibited by the statute, Code, 51-2-8, which reads, in part, as follows: "When such judge is * * * related to either of the parties, * * * or if, at the time of the institution of the suit, or at any time before its final termination, he, his wife, or any party or parties related to him in the degree hereinbefore specified, is a stockholder or officer, in any stock company or corporation which is a necessary party to the proceedings, * * * he shall not take cog-

nizance thereof unless all parties to the suit consent thereto in writing; * * *."

Thereupon, the plaintiff, relying upon Code, 56-1-1 (g), brought the suit in Ritchie County, in an adjoining circuit The latter section reads as follows: "If a judge of a circuit be interested in a case which, but for such interest would be proper for the jurisdiction of his court, the action or suit may be brought in any county in an adjoining circuit."

Plaintiffs in error urge that the judge of the circuit court of Harrison County was disqualified, not by interest, but by relationship. They urge that at common law disqualification for interest is well recognized, and that it must be a direct pecuniary interest personal to the judge himself before the disqualification exists. They say that this is the interest meant in Code, 51-2-8, which contemplates also, and separately, disqualification for relationship to a litigant, and knowledge rendering the judge a witness in the cause. They insist that Code, 56-1-1 (g), authorizes a suit to be brought in an adjoining circuit only when the judge of the original circuit is disqualified for interest—not for relationship. From the history of the enactment, we do not believe, however, that the drawing of those distinctions is consonant with its real purpose. In our opinion, Code, 51-2-8, in its entirety, covers the matters which disqualify a judge for interest and says, in effect, that the common law rule which defines interest disqualifying a judge as being direct pecuniary interest personal to himself, and which did not disqualify him for the interest he would have in the cause by reason of having a relative involved as a litigant before him, is extended in West Virgnia so as to disqualify a judge for interest when relationship with a litgant exists within the prohibited degrees, or there is relationship with a stockholder of a corporate litigant within the degrees named in the statute. We see small reason for making a distinction between the interest a judge would have in a case for himself directly, and that interest that he would inevitably feel if a near relative, in effect, were a party litigant. We believe that this is exactly the distinction, existing at common law, which the statute was aimed to do away with. We do not think that there is any question of definition which can blind to the fact that a very real human interest exists where near

relatives are involved. We therefore say that when a judge of the circuit court is disqualified within Code, 51-2-8, he is disqualified for interest within the meaning of Code, 56-1-1 (g). It is therefore our opinion that the circuit court of Ritchie County had jurisdiction to entertain the cause brought therein.

Under the same assignment of error it is urged that the circuit court of Ritchie County wrongfully assumed jurisdiction to interfere with the probate and administration jurisdiction of the county court of Harrison County. We do not think this point is well taken.. This proceeding is not a proceeding which has any direct bearing upon the administration of estates and the function exercised by county courts in connection therewith. It is a proceeding in equity for the appointment of a trustee. This is a time-honored inherent power of equity courts. It is furthermore made so by statute in this state. Code, 44-14-1.

The second assignment of error states under sub-head (a) that it was error for the judge of the circuit court of Ritchie County to grant the preliminary injunction herein without notice. This was done on November 15, 1932. The matter of giving notice upon the granting of an injunction is largely discretionary in the trial chancellor. In view of the development of this cause in the circuit court of Ritchie County, we do not deem it important to state here whether the trial chancellor in this instance abused that discretion or not. The cause proceeded to final decree some months later. That final decree perpetuated the preliminary injunction. It is now before us for our consideration and should we determine that upon the merits of the cause that final decree is free from error, it would seem to follow that whatever error or irregularity existed in the granting of the preliminary injunction is at any rate not prejudicial. In other words, if the plaintiffs were entitled to the preliminary injunction on the merits, then whatever error existed as to the manner of its granting, since there could be no appeal directly from that order, is now merged in consideration of the final decree. We cannot, however, see justification for the trial chancellor holding the motion to dissolve from November until May before passing upon it. This had the effect of holding the defendants helpless under the injunction for an unreasonable time.

478

Under sub-heading (b) of this assignment of error, it is urged that the trial court erred when it, at the same time, overruled the motion of the defendants to dissolve the injunction, overruled the demurrers to the plaintiffs' bill, and proceeded to decree on the merits. This is urged in the light of Code, 56-4-56, which provides that upon the overruling of a demurrer, the demurrant shall file his answer within fifteen days thereafter. The section provides that the trial chancellor may extend this time. Until this section became the law with the adoption of the 1931 Official Code, the statute provided in effect that a party might have a demurrer set down for hearing and upon its being overruled, the demurree might have a rule to plead against the demurrant. It will be noted that the purpose of the former section was, and that of the present section is, to speed the submission of equity cases. They do not contain a guarantee of any particular time in which to answer. They merely set a limit of the greatest length of time that shall be allowed for the coming in of the answer. The trial court has discretion in the matter and it may either extend the time beyond the fifteen-days or, in a proper case, require that the answer come in within a shorter time. Here, although some of the defendants protested, the trial court saw fit to decide the case upon the pleadings before him, after first having asked the defendants protesting to assign specific reasons for their protest. This they refused and failed to do. Under these circumstances, we cannot say that the trial judge abused his discretion in refusing to consider the attitude of the protesting defendants, who simply said they stood upon their legal rights as disclosed by the record and refused to reveal what course they desired or purposed to pursue, a sufficient reason to decline the motion of plaintiffs that the case be finally heard and decided upon the pleadings.

But there is a further and more important reason for not considering it error for the trial court to decide the cause, under the circumstances, on the pleadings. The substance of the defense to the plaintiffs' bill was that Sperry had already been elected voting trustee, and, consequently, there was no vacancy in the trusteeship and plaintiffs' bill could not be entertained. In order for Captain Sperry to have been

elected voting trustee it was necessary that he should have the 1656 shares of class A common stock held by the estate of Virgil L. Highland signed to his nomination. It was signed by himself and the Empire National Bank, two of the three executors. This raises the question at the crux of this entire case. Could a majority of the executors vote this stock? If they were not joint executors, doubtless they could.

There can be no doubt as to the soundness of the general proposition that executorial powers are joint and several, that is to say, that while the entire number of coexecutors may exercise their functions in conjunction, nevertheless, each individual executor is fully clothed with the powers of the office. This has been held in *Dean* v. *Duffield,* 8 Tex. 235, 58 Am. Dec. 108 (one executor rejecting a claim against the estate) ; *Alerding* v. *Allison,* 170 Ind. 252, 83 N. E. 1006 (executor stipulating with claimant against the estate that a certain line of conduct will not prejudice claim) ; *Mackay* v. *St. Marys Church,* 15 R. I. 121, 23 A. 108, 2 Am. St. Rep. 881 (power of one joint administrator to transfer a note made payable to both of two) ; *In Re Matter of Leopold,* 259 N. Y. 274, 181 N. E. 570, (power of one executor to compromise debt owing the estate over the protest of other coexecutors) ; *Murray* v. *Blatchford,* 1 Wendell (N. Y.) 583, 19 Am. Dec. 537 (power of two administrators to release a debt owing the estate without concurrence of third administrator) ; and many other cases in which the principle is distinctly stated. However, an examination of these cases, along with the cases that are presently to be discussed, will disclose that the principle that each of several coexecutors has the power to bind all in so far as the business of the estate is concerned, is confined to functions arising in the ordinary course of administration. Where the act under examination exceeds the powers of a personal representative acting in the ordinary course of administration and is not within the powers that could be exercised by such personal representative by reason of his status as such, but, to the contrary, involves an exercise of judgment and discretion causing it to partake of the nature of the act of a trustee, the courts have almost uniformly held that the power is to be exercised jointly and not severally. In the case of *Benezet* v. *Hess,* 63 Pa. Super. Ct. 408, in illustrating this difference, the court said :

480

"In the case before us it appears that the defendants were not merely executors engaged in the duty of winding up the estate and distributing it to those entitled to it under the will, but were engaged in duties which ordinarily did not come within the scope of executors, testator apparently having in view the continuation of the estate and for that purpose giving extraordinary powers to the executors. They were allowed to exchange the real estate of decedent for other real estate and in turn again sell the real estate so acquired. As these were not the ordinary duties cast upon executors but were in the nature of a trust all parties named as executors had to participate in the contract or purchase as well as in the negotiations preceding it or collateral to it."

Again, it was said by the Supreme Court of the State of New York in *In Re George Ringler & Co.*, 127 N. Y. Supp. 934, 937:

"It is true that: 'Coexecutors, however numerous, constitute an entity, and are regarded in law as one person, and consequently the acts of any of them in respect to the administration of estates are deemed to be the acts of all; for they have all a joint and entire authority over the whole property. It would seem to follow from this principle that they have the powers of joint and several agents of one principal, and that any action done or performed by one, within the scope and authority of his agency, is a valid exercise of power and binds his associates.' *Barry* v. *Lambert,* 98 N. Y. 300, 306, 50 Am. Rep. 677.

"But this is limited to acts of a ministerial nature. Acts that call for an exercise of judgment and discretion one of several cannot do. The concurrence of all is necessary. Perry on Trusts, Par. 411; *Fritz* v. *City Trust Company,* 72 App. Div. 532, 76 N. Y. Supp. 625. Institution of these proceedings is not a mere ministerial act. The bulk of the estate is invested in the stock of this corporation. Whether that corporation should be dissolved, its assets sold, and their stockholdings reduced to cash, requires the exercise of judgment and discretion of the highest degree. Therefore, both upon law and in reason, one coexecutor cannot bring this proceeding."

The rule spoken of seems to be generally applicable to sales or exchanges of land by executors, because it is likely that

in transactions affecting land, judgment, discretion and the peculiar qualifications which animate the testator in the selection of his executors (owing to the nature of the acts, except for confusing terminology, we might say trustees) are more present here than in any other kind of transaction. The following cases may be inspected as examples which sustain the rule that it requires the joint action of all coexecutors to negotiate sales of land for the estate. *Neel* v. *Beach*, 92 Pa. 221; *Daily's Appeal*, 87 Pa. 487; *Weeks* v. *Hosch Lumber Co.*, 133 Ga. 472, 66 S. E. 168, 134 Am. St. Rep. 213; *Holcomb* v. *Executors of Holcomb*, 11 N. J. Eq. 476; *In Re Simmons' Estate*, 254 Pa. 231, 98 A. 871.

We have not been able to find cases involving exactly the same point as in this case, but by what seems to us close analogy, the Pennsylvania Courts have laid down the rule that it requires the unanimous action of coexecutors to vote the stock of a corporation held by them. *Tunis* v. *Hestonville, M. & F. Passenger R. Co.*, 149 Pa. 70, 24 A. 88, 15 L. R. A. 665, 667; *Lafferty* v. *Lafferty*, 154 Pa. 430, 26 A. 388.

These cases, of course, proceed upon the theory that by reason of the nature of the duties to be performed, it was the intention of the testator that they should not be exercised severally, as is the case with the duties of executors within the scope of the routine affairs of administering the estate. It is therefore not surprising to find that the intention of the testator that the executors should act jointly and in conjunction may be established by the express terms of the will, as well as by the nature of the duties to be performed. As general authority for this proposition, see the following cases: *Bank of Port Gibson* v. *Baugh*, 17 Miss. 290, 302; *Werborn* v. *Austin*, 77 Ala. 381, 384; *Brown* v. *Hobson* (Ky.), 13 Am. Dec. 187.

We believe that it is unmistakably established by the reading of the will of Virgil L. Highland that the powers conferred by him upon his executors far transcended the ordinary powers required in the administration of an estate. It would serve no real purpose to here specify in detail what they were, but it suffices to say that they were managerial in the highest degree. This will gives the executors the right to carry on the business of testator in all respects ''as I could or might do if still living.''

As to the specific power of nominating a voting trustee of Clarksburg Publishing Company, we think, too, that that power partakes more of the function of trustees than it does of executors exercising powers essential to the administration of an estate. In the first place it was directly related to a highly important trusteeship in which the estate was vitally concerned. No better illustration of the vitality and delicacy of the duties to be discharged by the trustee could be had than the fact that during his lifetime, the testator had seen fit to occupy the position himself. This was the position that was to be filled by the nomination of a voting trustee. The enterprise that the trustee was in part to control is one requiring breadth of information and viewpoint as well as judgment of the highest order. So that it would be hard to think of a matter further removed from the ordinary duties of executors in the administration of an estate, than the duty to nominate a voting trustee for the Clarksburg Publishing Company.

So much for what can be gathered of the testator's intention as inferred from the duties conferred upon his executors. But what of the direct intention of the testator as expressed when the executors were named by the codicil? The will had named Empire National Bank of Clarksburg as the sole executor. On the day before his lamentable death, the testator appended thereto the following codicil:

> "I want Cecil B. Highland and Melvin G. Sperry to act as joint executors and trustees with the Empire Nat'l Bank of my estate, should anything happen to me.
> "They know about my business affairs and can handle them in conjunction with E. B. Deison who I would like to see made president of the Bank in case I do not survive.
> V. L. HIGHLAND.
> August 8, 1930.
> Witnesses: Mrs. V. L. Highland.
> Belva M. Marlow, R. N."

It will be noted that he makes Cecil B. Highland and Melvin G. Sperry "joint executors and trustees" to act with the bank. It will be noted further that he states that his executors can handle his business affairs *in conjunction*. The word "joint" of course has a well-recognized legal meaning which

need not be commented upon. The primary definition of the word "conjunction", according to the Century Dictionary, is "A joining or meeting of individuals or of distinct things; union; connection; combination; association." So much is this idea of union carried into the meaning of the word that it is used in astronomy to denote two heavenly bodies so completely in alignment from the place of observation that the light of the two appears as the light of one only.

So that we believe upon the basis of the foregoing considerations not only as to the nature of the acts to be done but as to the express language of the testator, it was the clear purpose and intent to make his executors joint executors, that they could not act severally, and that an act performed by less than the whole of them should be of no effect. It follows that the nomination of Sperry as voting trustee and of Geppert and Powell and Sperry as directors of the publishing company which were not joined in by Cecil B. Highland, the third executor, are a nullity.

But getting back to the final decree, it appears that Sperry, the bank, Powell and Geppert were the only persons against whom any relief was decreed. Sperry and the bank had answered, and had filed their demurrer. The only interest that Powell and Geppert had in the litigation and the only reason that they were joined as parties defendant was because they were nominated by Sperry, the bank and Morrison for directors in the publishing company. These nominations were, for reasons heretofore discussed, invalid. These facts all appear from the answers of Sperry and the bank, and it also appears from these two answers, taken in connection with the averments of the bill, that no different result could be reached in the cause and no fact which would vary the result could be shown. It therefore follows that, since the demurrer and answers of Sperry and the bank put squarely in issue the legality of the nominations of Sperry as voting trustee and of Geppert, Powell and Sperry as directors of the publishing company, and since that question is decided against the position that they take in their demurrers and in their answers, and the position that Geppert and Powell would inevitably be obliged to take, there could have followed no error that was prejudicial to the defendants from

the action of the circuit court of Ritchie County in deciding the case upon the pleadings without giving further time to answer or to take proof upon the answers already in. There was no relief decreed as to Deison, and J. Hornor Davis is not a party to this appeal. The case turns upon a question of law that was adequately presented and correctly decided by the circuit court of Ritchie County. It could not have been raised more completely and more directly if the other defendants had answered or if time had been given to all of the defendants to take proof.

We do not wish to be understood as encouraging trial courts to peremptorily decide cases upon pleadings over the objection of defendants. It would seem that as an ordinary thing upon overruling a demurrer, the demurrant should be given further time to prepare and file an answer and take his proof. When it is claimed that this has not been done to the prejudice of a defendant and that thereby a trial chancellor has abused the discretion lodged in him, we think that this court should view the matter in a light most favorable to the defendant's contention. We believe, in this case, that we have done so. The circumstances surrounding the entry of the decree, together with the decision of the legal questions involved, and considering the further fact that the defendants assign no particular ground for wishing further time, all impel us to believe that there was no abuse of discretion here.

Under another assignment of error, it is said that it was error for the trial court to read the affidavit of Cecil B. Highland on final hearing. Affiant was a party plaintiff and the affidavit was filed by order of court after the incoming of answers. It is in the nature of a special replication. But viewing it as an affidavit, improper to be read on hearing, such error as might follow from its consideration, in the light of the specific findings of the trial chancellor in the final decree set out, could not have been prejudicial.

The foregoing discussion, we believe, sufficiently disposes of all of the assignments of error contained in this record and brief by appellants. We do not think, therefore, that it is necessary to deal with assignments Nos. 3 and 4, and the points made in their various sub-divisions.

The decree of the trial chancellor will be affirmed.

*Affirmed.*

Per Curiam:

A situation is disclosed by this record that this court very deeply deplores. In the answer of Empire National Bank and Melvin G. Sperry, executors, paragraph eighteen beginning at the bottom of page 218 of the printed record, contains a charge that in the Harrison County suit, upon the dismissal thereof, counsel appearing of record for the plaintiffs impliedly agreed that no injunction would be applied for by plaintiffs after the dismissal of the Harrison County suit without giving to the defendants an opportunity to be heard upon the application in whatever circuit court it might be made. This answer is verified as to this particular part by Mr. Phillip P. Steptoe. No reply to the charge is made excepting the formal general replication entered. The trial court seems to have made no inquiry concerning the matter. We regard it as most serious. It should have been at once cleared up in the trial court. We have no disposition to treat the occasion other than as an appropriate one for the observation that attorneys at law should be extremely cautious in fulfilling, not only the letter, but the spirit, of their undertakings with their brethren at the bar, and should exercise equal care in accusing each other of bad faith. It is our sincere hope that this court will not soon again be embarrassed as it has been in these cases by a like occurrence.

MAXWELL, PRESIDENT, dissenting:

With great deference to the judgment of my brethren, I am unable to concur in this decision.

I shall not discuss the merits of the case, because in my judgment the record is not in condition that such consideration should be given by this Court. Procedural matters loom large and in my opinion should control the decision.

Of course, it is desirable that cases be disposed of on their merits, but before a case may be rightly considered and decided on its merits, there must be a regular and orderly approach to a status which permits of such decision.

All court procedure and systems of pleading are devised for the purpose of presenting the merits of cases in a manner conforming to established rules and precedents to the end that parties interested in litigation may have full and complete

opportunity to be heard before their rights are passed upon by a judicial tribunal. Any prescribed procedure which is not conducive to these ends is inherently defective and is based on injustice rather than justice. Nor, in our practice, can justification be given to any substantial ignoring of well-established rules of procedure, whether by common law, statute or judicial decision, which are founded in reason and which time and experience have proven to be meritorious. It is with this background that I am unable to approve certain procedural matters in this case.

The Ritchie County injunction was granted late at night without notice to the defendants and within two or three hours after the Harrison County suit had been dismissed. Why the great haste? The record does not disclose. The statute does not require notice as a preliminary to the issuance of injunctions in all instances (Code 53-5-8), but, in the light of legal history and experience the most reasonable interpretation of the statute is that notice should be given except in matters of the greatest urgency. We look in vain for anything in this record that would require us to believe that the plaintiffs' rights would probably have suffered prejudice if action on the prayer for an injunction had been delayed for a few hours to permit of the giving of notice to the defendants. There should be the greatest hesitancy on the part of trial chancellors in granting injunctions without notice.

In paragraph eighteen of the answer of Empire National Bank and Melvin G. Sperry, executors, it is averred, in substance, that in conference between counsel of the opposing parties in respect of the dismissal of the Harrison County case because of the disqualification of the judge of that circuit, and prior to such dismissal, counsel for the respondents were put in the belief that application for an injunction would not be made before another circuit court without notice to respondents; that counsel for respondents had stated in such conference that they desired to be heard fully on any subsequent application; that counsel for respondents had given their assurance to counsel for complainants that nothing would be done by their clients or on their behalf to disturb the existing status pending a hearing on complainants' application for an injunction before another circuit judge. This is sworn to by one of counsel for respondents, not upon information and

belief, but as a fact. These matters are in no wise met save by general replication. This answer was filed at December Rules, 1932. No general replication was actually filed, but such replication was noted in the final order of May 19, 1933. Efforts to have the motion to dissolve acted upon in the meantime had been unavailing. These situations are very unusual.

In the final decree, it is recited that the cause came on to be heard, among other things, upon affidavit of Cecil B. Highland dated December 5, 1932. This affidavit pertains to questions of fact affecting the merits of the case. There is no rule in our judicial system which permits *ex parte* statements of a party to a controversy to be considered as a basis of adjudication of legal controversies.

On the 19th of May, 1933, the court overruled both the motion to dissolve the temporary injunction and the demurrer to the bill. Thereupon, on motion of the complainants and against the protest of the respondents, the court required a submission of the case for decision on its merits, on the record as then made. When counsel for respondents were asked by opposing counsel why they desired that the case be not then submitted for decision on its merits, they stated that they stood on their legal rights as the same appeared from the record. In this, I am impressed, they were justified, for clearly, the defendants who had not answered were entitled to a day in which to do so or certainly to determine upon due deliberation whether they desired to answer. In my judgment, the statute does not contemplate that any defendant in a chancery cause shall be required to submit to a decision of the cause on its merits, following the overruling of his demurrer to bill, without his having opportunity to answer the allegations of the bill.

Under the statute (56-4-56) a defendant must file his answer within fifteen days after demurrer to the bill has been overruled "unless, for good cause shown, the time is enlarged by the court, or the judge thereof in vacation; and if he fail to appear and answer the bill within such fifteen days, or additional time, if any such be granted, the plaintiff shall be entitled to a decree against him for the relief prayed for therein * * *." The Revisers, in their note to this section, say that it "imposes upon a defendant the duty to answer within the

488

time specified in the statute, or suffer the burden imposed by it as a result of his default.'' The statute makes provision for extending the period beyond fifteen days, but makes no provision for a more limited period. Under that statute, I do not think that a trial chancellor has the right to enter a decree against a defendant, who stands upon his rights as disclosed by the record and who does not consent to such decree, immediately following the overruling of his demurrer to the bill. Granting, under the court's opinion herein, that in a proper case a shorter period than fifteen days may be fixed by the chancellor, it does not follow that there may be a complete denial of a litigant's right to answer. I cannot approve a procedure which adjudicates the rights of a litigant without giving him an opportunity to be heard in a manner contemplated by statute.

Nor am I able to justify what I conceive to be the serious and prejudicial procedural errors in this case on the theory that the chancellor could not properly have decided the case on its merits in any way other than that in which he did decide. In my judgment, such conclusion here involves the throwing to the winds of basic procedural principles which have been devised for the protection of litigants not only in this case, but in all cases. If certainty and regularity of procedure are worthwhile we should adhere to a course which is conducive to that end.

I would reverse the final decree, dissolve the injunction and remand the case for further proceedings not at variance with the basic principles of procedure herein discussed.