CECIL B. HIGHLAND, EXECUTOR, ESTATE OF VIRGIL L. HIGHLAND, DECEASED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98726.     Promulgated February 13, 1941.

*L. R. Lynch, Esq.*, for the petitioner.
*E. L. Corbin, Esq.*, for the respondent.

OPINION.

Kern: The petitioner claims the expenses here in question as deductible from the estate's gross income under section 23 (a) of the Revenue Acts of 1934 and 1936, as applied to estates under section 162 of the same acts. The respondent has denied them on the ground that they are properly expenses of administering the estate and, therefore, capital in nature, and are not necessary and ordinary expenses incurred in the conduct of a trade or business. The respondent makes six points any one of which, it is said, would prove fatal to petitioner's contention. They are, (1) that the expenditures were administration expenses; (2) that they were purely an expenditure for the benefit of the legatees; (3) that the estate was not in trade or business during the years in question; (4) that the services for which the fees were paid were given in part for retaining voting control of a business; (5) that they have already been deducted from the gross estate as capital expenditures; and (6) that if any of the payments is not deductible, all must be held so, because no allocation has been made between them.

At the outset of the determination of these various claims for deduction it should be said that the line between expenses chargeable against the estate and deductible from the gross estate in computing the estate tax and those chargeable against income of the estate is, like most of such lines in the law, one which can not be drawn without difficulty and which, therefore, makes difficult generalization of the *criteria* applicable. In *George W. Oldham et al., Executors*, 36 B. T. A. 523, this Board had occasion to review many of our earlier decisions and to deduce from them the tests to be applied. Omitting the cases there cited, we quote what we there said, at page 529:

Ordinarily the fees and commissions of executors, administrators, attorneys, and other representatives of estates are regarded as administration expenses and are applied against the gross estate in determining the estate tax. Ordinarily such fees and commissions are not allowable as deductions in determining the net income of the estate. * * *

Where, however, such fees or commissions are paid for services rendered exclusively in carrying on the affairs of the estate as a business, rather than in preparing it for settlement and distribution, such payments constitute ordinary and necessary expenses and may be deducted for income tax purposes. * * *

Frequently, the facts of particular cases do not lend themselves to easy determination of the character of such expenses. Most solvent estates, such as the one in the instant case, are going concerns, producing income; though it be no more than interest from a savings account, a bond or a promissory note, or rent from a farm or dwelling house. The normal and usual activities of the representative of the estate include the collection of such income, the paying of debts and taxes, the making of repairs, the execution of leases, the placing of insurance, in order to prepare the estate for distribution. The fact that such activities also constitute the ordinary incidents of carrying on business does not constitute the expenses thereof expenses which may be charged against income if they are a part of a normal and usual process of administration.

The test most frequently used to distinguish between the two types of expenses is whether the estate has been or is required to be kept intact beyond the period usually necessary for administration. If the process of administration goes forward in normal course, and distribution and settlement are completed within a usual and reasonable time, the expenses of the representatives of the estate are regarded as administration expenses. * * * On the other hand, in cases where, according to the provisions of the will or testamentary trust, it is necessary to continue the estate intact over a period of years, and to carry on its affairs as a business in the interim, the fees and commissions paid to representatives of the estate for such services constitute expenses, deductible for income tax purposes. * * * And where the will went further and, in addition to providing for the creation of a trust to run for a long period of time, provided for the payment to the executors of annual salaries out of the income of the estate, in lieu of fees, commissions, and compensations provided by law, it was held to be apparent that such payments were intended to be applied to the carrying on of a business and were properly chargeable against income. * * *

In distinguishing between the two types of expense, one of the text writers draws the line between "initial expenses" and "current expenses." Montgomery & Magill, Federal Taxes on Estates, Trusts, Gifts, 1936–1937, p. 39. This suggestion is supported by the decision in *Estate of William G. Peckham, supra*, where the will required that the estate be kept intact for six years, and the action of the Commissioner in allowing as deductions for estate purposes only those executors' commissions paid during the first three years of administration was held to be reasonable and proper. * * *

It is apparent, upon the facts of the *Peckham* case, that the services performed by the executors were no more for one purpose than the other during the two periods of three years each. In fact, the final services of the executors, in distributing the estate, come within the second period. But the apportionment made by the Commissioner, although more or less arbitrary, was equitable in its result and consistent with the principle frequently enunciated by the Board concerning expenses of estates kept intact beyond the ordinary administration period.

*       *       *       *       *       *       *

Another suggested basis for distinguishing between administration expense and income-producing expense, is that of the temporary character of the agent representing the estate and the limited duties which he has to perform. Thus, in *Thomas H. Franklin et al., Executors and Trustees, supra*, the Board held that a fee paid to a temporary administrator was for services rendered in producing

income from the estate during the taxable year, and hence, was deductible for income tax purposes. Where, as in the *Franklin* case, the services of a temporary representative are clearly identifiable as income-producing, rather than as preparing the estate for distribution in normal course, then the expenses of such services should be charged against income. But the mere fact of temporary representation of the estate, without more, is of no importance. In several cases the expenses of temporary representatives have been held to be administration expenses. *James D. Bronson et al., Trustees,* 7 B. T. A. 127; affd., 32 Fed. (2d) 112; *Estate of Caroline R. Rowland,* 31 B. T. A. 194, 196.

With this statement of general principles, we now come to a consideration of the particular deduction first claimed here. The fact of the expenditures in these suits is not disputed. There were four suits here involved in respect of which attorneys' fees were claimed, and some narration here of their scope and purpose may be helpful in an understanding of our opinion, even at the risk of needlessly repeating matters set out fully in our findings.

(a) Petitioner paid $3,522 in 1935 and $7,068.03 in 1936 as attorneys' fees in two suits, similarly styled as *Highland et al.* v. *Empire National Bank of Clarksburg et al.,* and in contemporaneous creditors' suits and other proceedings. The first of these suits was decided by the State Supreme Court of Appeals on December 16, 1933, and is reported at 114 W. Va. 473; 172 S. E. 544; the second was decided on December 21, 1933, and is reported at 114 W. Va. 498; 172 S. E. 551. While the facts involved in these suits are related in detail in our findings, they are set out sufficiently fully for our purposes here in the state court's opinions, which we shall therefore quote from or summarize.

In the first of these suits the purpose was to achieve the appointment of the petitioner, Cecil Highland, as one of the two voting trustees of the common stock of the Clarksburg Publishing Co., a very large proportion of which the estate owned; and later to enjoin the acts of Sperry, who was appointed voting trustee by his coexecutor, the Empire National Bank. This suit was successful. The precise point before the state court and the light which its decision throws on our problem justifies quotation from its opinion (pp. 547, 548):

\* \* \* However, an examination of these cases, along with the cases that are presently to be discussed, will disclose that the principle that each of several coexecutors has the power to bind all in so far as the business of the estate is concerned, is confined to functions arising in the ordinary course of administration. Where the act under examination exceeds the powers of a personal representative acting in the ordinary course of administration and is not within the powers that could be exercised by such personal representative by reason of his status as such, but, to the contrary, involves an exercise of judgment and discretion causing it to partake of the nature of the act of a trustee, the courts have almost uniformly held that the power is to be exercised jointly and not severally. \* \* \*

\*　　\*　　\*　　\*　　\*　　\*　　\*

We believe that it is unmistakably established by the reading of the will of Virgil L. Highland that the powers conferred by him upon his executors far transcended the ordinary powers required in the administration of an estate. It would serve no real purpose to here specify in detail what they were, but it suffices to say that they were managerial in the highest degree. This will gives the executors the right to carry on the business of testator in all respects "as I could or might do if still living."

As to the specific power of nominating a voting trustee of Clarksburg Publishing Company, we think, too, that that power partakes more of the function of trustee than it does of executors exercising powers essential to the administration of an estate. * * * So that it would be hard to think of a matter further removed from the ordinary duties of executors in the administration of an estate, than the duty to nominate a voting trustee for the Clarksburg Publishing Company.

So much for what can be gathered of the testator's intention as inferred from the duties conferred upon his executors. * * *

In the second suit the purpose was to remove Sperry and the Empire National Bank as coexecutors. The petitioner, Cecil Highland, had many difficulties in administration of the estate with his coexecutors, which it is unnecessary to relate here, but among other things the coexecutors induced certain creditors of the estate to bring suit, in the defense of which by petitioner further attorneys' fees were paid. In the second case before it the State Supreme Court of Appeals recited the extensive interest of the decedent in the Clarksburg Publishing Co., which published two daily newspapers; and the provisions of decedent's will which directed his "executor and trustee to carry on any business or financial affairs in which I may be interested, individually, or with others, at the time of my death, as fully, and to the same extent, as I could or might do if still living * * *"; and the further direction respecting payments to his widow and children; and the court upheld petitioner's petition to appoint new trustees, stating its conclusion in part as follows (at page 553):

The powers thus conferred being in the nature of a trust, as we have held in the companion case similarly styled, must be exercised jointly. 11 R. C. L. 491.

(b) The third suit in question was brought by petitioner as executor against J. Hornor Davis (*Highland* v. *Davis* (W. Va.), 6 S. E. (2d) 922) and involved the expenditure by petitioner in 1935 of $1,000 and in 1936 of $4,750 in attorneys' fees. In that case the Supreme Court of Appeals of West Virginia reaffirmed its decision in *Highland* v. *Davis*, 119 W. Va. 501; 195 S. E. 604, and reversed and remanded the case again to the trial court. The proceeding before the trial court was apparently still pending at the time briefs were filed in the instant tax proceeding. It appears that the purpose of this suit was the cancellation of a sale by Davis in 1935 of a block of

common stock of the Clarksburg Publishing Co. which had been pledged by decedent to secure a note and had been repledged by his executors to secure a balance unpaid at his death. See the second *Davis* case at page 922. The ground alleged was fraud in the valuation and price paid by Davis for the note and pledged stock, which was bought without notice to petitioner. The appellate court "ascertained that there was no fraud independent of price", and remanded, as already stated, the case to the trial court for determination of this question.

(c) The petitioner paid out of the income of the estate $300 in 1935 and $303.75 in 1936 as attorneys' fees in the suit of E. A. Bowers against petitioner. Bowers sued for $8,500, but got only about $6,000 as counsels' fees in prosecution for petitioner of the two cases discussed, *supra*, under (a). The attorneys' fees here involved were incurred by petitioner, therefore, in attempting to reduce the cost of litigation.

(d) One more expenditure for attorneys' fees falls under this heading—petitioner's payment of $251.25 in 1936 in settling for about $10,000 the claim of Lillie Denham against the estate for about $17,000. The suit arose out of certain payments made by decedent as administrator of Denham's estate which it was held should have been paid to the widow. The widow thereupon brought suit.

This concludes this group of deductions. It will be observed that since they differ materially in nature the same rule will not cover each of them.

(a) In the first of the two suits subsumed under this head, the purpose of the suit was to have a voting trustee appointed for certain stock of the Clarksburg Publishing Co., in which the decedent was heavily interested. This was obviously a matter connected with the carrying on of the business of the estate and not with its liquidation. The Publishing Co. published two daily newspapers, and the terms of decedent's will on this point, fully set out in our findings, obviously contemplate the carrying on of this business by his executors, who were also made testamentary trustees for the purpose. The second suit, we think, falls in the same category. There the petitioner sued to have his coexecutors removed in order to protect and maintain the business enterprises of the estate, including the Publishing Co. The expense of defending creditors' suits arose out of the same difficulties between the executors. We think that in both these cases, as the State Supreme Court of Appeals thought, the questions involved in the suits were the management of the estate's assets as a business, and that the executors-trustees were, therefore, acting with full discretion as trustees rather than as executors. It follows, therefore, under the

principles which we laid down at the beginning of this opinion, that attorneys' fees incurred in those suits were incurred in carrying on a business, and are, therefore, deductible from gross income.

The cases of *Higgins* v. *Commissioner*, 111 Fed. (2d) 795; *Miller* v. *Commissioner*, 102 Fed. (2d) 476; *City Bank Farmers Trust Co., Trustee* v. *Commissioner*, 112 Fed. (2d) 457; and *George Vanderbilt Trust*, 36 B. T. A. 967, cited and relied upon by respondent, may easily be distinguished on their facts from the instant proceeding. Here the petitioner was directed by decedent's will to carry on his business and financial affairs, and the evidence shows that petitioner was actively engaged during the taxable years in carrying on the business enterprises in which the estate was interested. Clearly the petitioner was not in the role of a passive investor or mere conservator of property. See *Pyne* v. *United States* (Ct. Cls.) 35 Fed. Supp. 81; *Marjorie Fleming Lloyd-Smith*, 40 B. T. A. 214.

(b) The suit of *Highland* v. *Davis*, brought by petitioner, related also to the stock of the Clarksburg Publishing Co. It was twice brought before the Supreme Court of Appeals for West Virginia, and is still pending, apparently, after reversal and remanding, in that court. Here the suit had nothing to do with management of the Publishing Co., however, but was solely to set aside a sale of the stock held by the estate which had been pledged and sold under the pledge for a price considerably below what petitioner as an executor claimed to be the fair market value and without prior notice to him of the sale. The purpose of the suit or suits, in other words, would seem to have been to conserve assets of the estate, which is the duty of an executor in the administration and liquidation of the estate. Such a purpose has nothing to do with managerial administration of the estate as a going concern. We think, therefore, that the attorneys' fees so incurred should have been charged to the estate and not to its income, and are not properly deductible from its gross income.

(c) The suit against petitioner brought by one Bowers, who had acted as petitioner's counsel in the two suits covered under (a) above, had as its object the recovery of larger counsels' fees in those cases than petitioner thought reasonable. Do petitioner's attorneys' fees paid in order to reduce attorneys' fees in those two suits, which were instituted to protect business enterprises forming a part of decedent's testamentary trust, fall into a different category from the fees there involved? Had Bowers' claimed fee been paid, all of it would have been deductible under our holding above. Do fees paid to reduce that fee retain the character of a testamentary trust carrying on business, or are they simply expenses to conserve assets of the estate and as such chargeable against the estate? The question is a close one, but we are of the opinion that these fees are deductible from

gross income. The purpose of the litigation and its effect was to conserve the estate's assets, or, put another way, to save the estate a greater expense than was thought necessary, but the estate became involved in the litigation in the first place only because it was trying to manage certain voting stock of the publishing company in order to carry out the trustee's intentions, and not through the process of administering the estate for liquidation or distribution. We think the business character of the primary suits, in other words, affects the character of this suit, and that the latter's cost, therefore, is deductible from gross income.

(d) The cause of action in Denham's suit arose out of acts done by the decedent in his lifetime. The claim was compromised, and the attorneys' fees were paid in the suit which resulted in this compromise. The claimant's right was against the decedent for his acts as executor of her husband and her claim on decedent's death was, therefore, against his estate. We think that clearly in these circumstances the expense was chargeable against the estate and was not deductible from its gross income in the taxable year.

Petitioner paid $1,160.79 in 1935 and $203.50 in 1936 as miscellaneous expenses such as stenographic work in the two suits already discussed of *Highland* v. *Empire National Bank* and *Highland* v. *Davis*. In accordance with our holdings above on attorneys' fees in these suits, we allow only such expenses as were incurred in the Empire National Bank suit, which were $674.74 for 1935, none being claimed for 1936. The rest we disallow.

Petitioner paid $1,164.15 in 1935 and $1,274.44 in 1936 as office expenses such as collecting rents, bookkeeping, correspondence, and general supervision of the estate's property. He claims two-thirds of this sum, or $776.10 and $849.62 for the respective years, as a fair share attributable to the business of the estate. With the estate's large interests there would seem to be no reason why such expenses would not constitute reasonable deductions, and although the respondent does challenge the allocation here made, it is obvious that precise allocation would be impossible, and the allocation made, although a rough approximation, seems on the testimony reasonable. We, therefore, allow the deductions claimed.

Finally, petitioner as executor paid to himself in his private capacity $117.13 in 1936 as reimbursement of certain small expenses incurred in the course of the litigation. No segregation is made of them and they must, therefore, be disallowed.

It may be added that all the disbursements in issue were duly reported by petitioner as executor in 1935 and 1936 to the commissioner of accounts of the state having jurisdiction and were duly confirmed by the commissioner and by the county court. Their payment is not,

therefore, questioned, but only the effect in tax law of the purpose for which the suits in question were instituted or defended.

One or two questions raised by the respondent of minor import remain to be disposed of. We need add nothing to what has already been said in discussing the state court's opinion in petitioner's suit to remove his coexecutors in answer to the respondent's contention that such a suit had no relation to the income of the trust beyond pointing out that a business trust was contemplated by the will to manage decedent's "going concern" property as well as to distribute it in due course to his beneficiaries, and that conservation of the trust's assets was as much the duty of the trustees as producing income. See our discussion of a similar objection in *Florence Grandin*, 16 B. T. A. 515, 517. Nor do we think, for reasons already given, that the circumstances involved here are comparable to those in *Crowley* v. *Commissioner*, 89 Fed. (2d) 715 (6th Cir.), on which respondent relies. Furthermore, respondent's contention that the suits for the removal of the two other executors and testamentary trustees were brought by the widow and children of decedent for their own benefit, and that petitioner was a party plaintiff merely *pro forma* and only in his personal capacity, is not borne out by the record. The facts are that petitioner as executor brought the suits in which the decedent's widow and children were joined with him as parties plaintiff, and as such executor he paid the fees of the attorneys employed in regard thereto. The payment of such fees by him as executor was approved by the state court under whose jurisdiction the estate and testamentary trust were being administered.

Finally, it is suggested by respondent that the deductions claimed from 1935 and 1936 income here had already been claimed and allowed to the executors as deductions from the estate tax. Petitioner does not deny this, but points out that under our decision in *Robert J. Kleberg et al., Executors*, 31 B. T. A. 95, that fact is immaterial, if the deductions now claimed would have been otherwise properly deductible from the estate's gross income. The Commissioner acquiesced in our decision in that case, in which we said at page 100:

\* \* \* If an item is properly deductible under some provision of the estate tax law in determining the net estate subject to the tax, and the same item is also deductible under a provision of the income tax law in determining the net income of the estate subject to income tax, that fact does not militate against the allowance in either levy.

This case is concerned with deductions, as was the *Kleberg* case, and we know of no authorities to the effect that with regard to deductions the income tax and the estate tax must be read *in pari materia*.

No facts have been presented here which would support the doctrine of equitable recoupment, nor is that doctrine argued or even referred to by respondent.

Since no equitable ground such as equitable recoupment or the statutory impossibility of correction of the estate tax is shown to exist, we decide this issue in favor of petitioner on the authority of *Kleberg's* case.

*Decision will be entered under Rule 50.*