7637

STACKHOUSE v. COUNTY BOARD OF COMMISSIONERS FOR DILLON COUNTY.

STATUTES—DILLON COUNTY—ELECTIONS.—However plain the ordinary meaning of the words used in a statute may be, the Courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature, or would defeat the plain legislative intent, and if possible will construe the statute so as to escape the absurdity and carry the intention into effect. An act, 26 Stat., 960, literally providing the board of county commissioners shall order an election to be held at Dillon on a day named, on issuing coupon bonds to aid in building a courthouse, construed, upon consideration of the whole act, concurrent acts and the circumstances, to mean the election shall be held by the board of county canvassers at all the precincts in the county, and having been so held the election is sustained on the further ground that it is an election without protest on part of voters or tax payers and held by *de facto* officers.

Petition in the original jurisdiction of this Court by R. P. Stackhouse and others, composing the courthouse commission of the County of Dillon, for mandamus against the County Board of Commissioners of Dillon County.

*Messrs. Livingston & Gibson,* for relators, cite: *As to construction of statutes:* Vattell, sec. 285; 33 S. C., 164; 16 S. C., 425. *Instructions in act as to notice, time, place, etc., only directory:* 15 Cyc., 362; 10 Ency., 588; Potters Dwarris on Stat., 222; 20 S. C., 361; 15 Cyc., 311, 322; 10 Ency., 626, 670; 90 A. S. R., 43; 120 A. S. R., 794; 61 Ill., 99; 102 Cal., 184; 63 Ill., 374; 22 S. R., 558; 104 Ill., 339; 23 Ky. L., 1356; 90 Am. St. R., 50; 1 McM., 336; 79 S. C., 248; 76 S. C., 461; 78 S. C., 461; Chev., 369. *All acts relating to same subject must be construed together:* Potters Dwarris on Stat., 189; 26 Ency., 620, 623; 11 Wheat., 385; 20 John., 744; 9 Barb., 161; 1 Kent, 463; 28 S. C., 528; 3 T. R., 594.

*Mr. N. B. Hargrove,* contra, cites: *Election must be held at place fixed by law:* 15 Cyc., 343. *Right to hold must be conferred by law:* 15 Cyc., 317; *State* v. *Sims,* 18 S. C. *Notice must be given by officer designated:* 15 Cyc., 322.

July 21, 1910. The opinion of the Court was delivered by

MR. JUSTICE WOODS. In this proceeding for mandamus the relators, constituting the courthouse commission of Dillon county, ask that the county board of commissioners of that county be required to execute and deliver county bonds to the amount of $40,000 to be sold by them and the proceeds expended in the construction of a courthouse and jail. The respondents allege that the statute law of the State authorizes the board of commissioners to issue bonds when such issue has been approved by a majority vote at an election held in pursuance of the statute. It is conceded that an election was held at all the election precincts in the county, after due advertisement, under the order and control of the board of election commissioners of the county, and that at such election there was a majority vote in favor of the issue of the bonds, but it is contended that

this election was illegal and could confer no authority to issue the bonds, in that the act required the election to be ordered and conducted by the county board of commissioners, not at all the voting precincts, but at the town of Dillon alone.

The County of Dillon was established by act of the legislature, approved February 5, 1910. Among other things necessary to the organization of the new county, the statute provided for the erection of a courthouse and jail by the commissioners, who are the relators in these proceedings. This act authorized the commissioners to receive donations, but invested them with no power to obtain funds by pledge of the public credit or otherwise. The attempt was made to supply this deficiency and to provide the commissioners with the funds requisite for the construction of the public buildings by an act approved on the 25th day of February, 1910. The first section of this statute provided: "That for the purpose of providing additional funds for erecting and furnishing or equipping a new courthouse building for the County of Dillon, at Dillon, S. C., the county board of commissioners of said county be, and they are hereby, authorized and empowered to issue and deliver to the special courthouse commissioners hereinafter named, interest-bearing coupon bonds of said county, to be known as courthouse bonds, in the aggregate sum of forty thousand ($40,000) dollars, * * *: *Provided,* That for the purpose of determining the issue of bonds authorized in section 1 of this act, *the said commissioners shall order an election to be held at Dillon, on the second Tuesday in April, 1910,* on the question whether the said bonds shall be issued or not, in which election only the qualified voters residing in *said district* shall be allowed to vote, and said commissioners shall give notice of said election for three weeks in the Dillon Herald, a newspaper published in the town of Dillon, shall designate the time and place and appoint the managers of said election-

tion, and receive the returns of the managers and declare the result."

The difficulty is indicated by the words of the statute we have italicized. Viewing the context alone, no one would hesitate to say that "the said commissioners" who are required to order the election meant the county board of commissioners, for that board of commissioners had just been referred to in the act as the commissioners authorized to issue the bonds. But it was impossible for the county board of commissioners to order an election on the second Tuesday in April, 1910, because no such board was or could have been then in existence, inasmuch as the act creating the County of Dillon provided that on that same day the first county board of commissioners should be elected. Hence, if the statute providing for the election on the bond issue be construed so as to give force to all the words just as they are used, the absurd result would be reached that an election was to be held by a board which could not be in existence at the date fixed for the election. Giving the ordinary meaning to the words used, the further absurdity would be inevitable that the question of issuing bonds for county purposes, binding on the entire county, should be decided by an election held at the town of Dillon, where only the electors registered at that precinct could vote.

However plain the ordinary meaning of the words used in a statute may be, the Courts will reject that meaning, when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the legislature, or would defeat the plain legislative intention; and if possible will construe the statute so as to escape the absurdity and carry the intention into effect.

The cardinal rule that the Courts should in all cases give effect to the obvious intent of the legislature, and that every technical rule of construction should yield to the clear meaning of the statute, is stated in Endlich on Stat., Inter.,

section 295.    Numerous cases in which clerical errors have been corrected by the Courts pursuant to this principle are given in section 319 of the same work.

This rule has been followed in many cases in this and other jurisdictions.    In *Waring* v. *Cheraw etc. Ry. Co.*. 16 S. C., 412, the word "hereinafter" was read "hereinbefore," when the use of the former would have destroyed the mani-fest purpose of the statute.    In *Kitchen* v. *Southern Ry. Co.*, 68 S. C., 554, 48 S. E., 4, the word "of" was construed to mean "or," in order to give full effect to the meaning of Lord Campbell's Act.    In *Baldwin* v. *Travis County* (Texas), 88 S. W., 480, the word "taxed" was substituted for "attached," the Court holding that the use of the latter word "appears to be improper and inapt, in that it does not appear to definitely express or convey the meaning evidently intended by the legislature."    In *California Loan Co.* v. *Weis* (Cal.), 50 Pac., 697, it was held that the word "July," which was evidently intended, should be read instead of "June," which had been used in the act under consideration. In *In re Frey* (Penn.), 18 Atl., 479, the word "city" was inserted instead of "county," when the Court was of opinion that "the section is senseless and absurd as it is written, while the purpose of the legislature is perfectly obvious and certain."

While this rule is generally recognized, the Courts in applying it should exercise circumspection to avoid any effort to amend statutes.    The principle depends upon the absurdity being manifest and the legislative intent obvious. Here it is perfectly obvious that the purpose of the legis-lature was to give the electors of Dillon county the oppor-tunity to decide by an election whether funds should be provided by issue of county bonds for buildings absolutely indispensable.    What public officials should conduct the election was an entirely subordinate matter.

A statute so plain and important in its purpose should not be declared impossible of execution merely because as

to a subordinate matter—the method of holding an election—the legislature has used words, which, given their literal meaning, would impose impossible or absurd conditions. In such a case the literal meaning of the words must be rejected and a meaning assigned to them expressive of the legislative intent, if such intent be plainly indicated to the Court by consideration of the entire statute, of other statutes on the same and similar subjects, and by taking into view all the related facts and conditions.

Looking at the matter in this way, we find that the General Assembly could not have intended the county board of commissioners to order the election when there was no such board; and that, therefore, "the said commissioners" who were ordered to hold the election must have been some board of commissioners already in existence, whose general organization and duties made it appropriate that it should have charge of an election. Such a board was the board of election commissioners already created under the statute establishing Dillon county. That act and the act providing for the necessary public buildings of the county were passed at the same session of the General Assembly; they related to the same subject, and, therefore, they should be read and construed as far as possible as one statute. The former act had already provided that the board of election commissioners should hold an election for county officers on April 10, 1910, when the second act provided for an election on the question of the bond issue; it was doubtless intended that this should be one of the questions voted on at the same election, not that there should be two elections. Certainly it is very improbable that the General Assembly meant that there should be two sets of commissioners ordering and conducting two elections on the same day with different machinery. We think when the whole subject is viewed in its entirety it is not overstraining the meaning of words to hold that the General Assembly meant that the question of the bond issue should be submitted to the people

on the same day and by the same commissioners who were required to submit the question of the election of public officers.

There can be no doubt that the General Assembly meant further that the election should be held in the County of Dillon, and that the qualified electors of the county should vote at their respective precincts, not that the election should be confined literally to the town of Dillon.

The election having been ordered and held by the board of election commissioners, in accordance with the statute as we interpret it, and having resulted in favor of the issue of bonds, there is no reason why the county board of commissioners should not turn over the bonds to the relators as the courthouse commission. But even if it be assumed that the statute directed the election to be ordered and held not by the board of election commissioners, but by some other board, that would not make the election as held a nullity. It appears to have been fairly conducted after due notice by officers who in good faith supposed that they were authorized to hold it; and there was no protest nor objection of any kind by the voters or tax payers, either before or after the election. Under these circumstances an election held by *de facto* officers will be recognized as valid. The authorities so holding are cited in *Wilson* v. *Cox,* 73 S. C., 398, 53 S. E., 613.

It is, therefore, ordered and adjudged that a writ of mandamus issue, requiring the county board of commissioners of Dillon county to issue and deliver to the courthouse commission county bonds in accordance with the provisions of the statute.