17064

A. W. BOHLEN, York County Engineer, W. HALL SPENCER, County Supervisor for York County, and M. G. ROGERS, Member of the Board of Directors for York County, Appellants, v. J. ED ALLEN, J. A. ADKINS, F. M. HOOD, and SAM L. CLINTON, Members of the Board of Directors for York County and J. BEN WHITE, Respondents

(89 S. E. (2d) 99)

*John A. Martin, Esq.,* of Winnsboro, *for Appellants,*

*Messrs. John M. Spratt,* of York, and *J. Means McFadden,* of Chester, *for Respondents,*

September 13, 1955.

TAYLOR, Justice.

This appeal is from an Order of the Honorable J. M. Brailsford, Jr., presiding Judge, of the Court of Common Pleas for York County, said Order arising out of an action brought by appellants for the purpose of determining who was the legal county engineer for York County from and after September 15, 1954.

The principal question for adjudication is whether or not appellant Bohlen was entitled to retain his position as county engineer of York County, by reason of the failure on the part of the Board of Directors for York County to select, in full compliance with the York County Board of Directors Act, a succcessor to appellant Bohlen as county engineer for said County. The determination of that question depends upon the construction of what is known as the York County Board of Directors Act, Act No. 962 of the Acts and Joint Resolutions of the General Assembly of South Carolina of 1950, and Sections 14-3601 through 14-3614, and Sections 33-1921 through 33-1925, Code of Laws of South Carolina of 1952.

By Act No. 962 of the Acts of 1950, a County Governing Board for York County, to be known as the County Board of Directors for York County and the office of supervisor for York County were created. The governing body for

York County succeeded the former supervisor and commissioners for York County and the statutes which had created the former offices of supervisor and county commissioners were repealed.

The Title of the Act appears as follows:

"An Act To Create A County Governing Board for York County To Be Known As The County Board of Directors Of York County And To Provide For The Appointment Of Its Members, Their Terms Of Office, Powers And Duties, And To Repeal Sections 4896, 4897, 4898, 4899, 4900, 4901, 4902, 4903, 4904, 4905, 4908, 4909, 4911, and 4912, Code Of Laws Of South Carolina, 1942, And All Acts Amendatory Thereto."

Section (1) of the Act provides as follows:

" 'Section 4894. (1) The office of supervisor for York County is hereby created, and the said supervisor shall be chairman of the County Board of Directors for said county, to be herein created, and shall, in conjunction with the said County Board of Directors, have a general supervision over the public highways, roads, bridges, and ferries, and over the paupers and all other matters relating to the disbursements of public funds for county purposes, and under proper authority to borrow for county purposes, and in any other case that may be necessary for the internal improvement and upkeep of matters or things concerning said county, except such powers, duties, responsibilities and control as may be hereafter delegated either to said supervisor or said County Board of Directors or to individual members thereof'."

Section 14-3604, of the Code of Laws of South Carolina of 1952, provides as follows:

"The county supervisor shall, in conjunction with the county board of directors, (a) have general supervision over the public highways, roads, bridges and ferries and over the paupers and all other matters relating to the disbursement of public funds for county purposes, and (b) under proper

authority, have power to borrow for county purposes and in any other case that may be necessary for the internal improvement and upkeep of matters or things concerning the county, but he shall not have such powers, duties, responsibilities and control as may be delegated either to the county board of directors or to individual members thereof."

The pertinent provisions of Act No. 962 of the Acts of 1950 and of the South Carolina Code of Laws for 1952, insofar as the county engineer for York County is concerned, are as follows:

Act No. 962, Acts of 1950. " 'Section 4895. * * * (4) The said county board and the supervisor for York County shall have supervision of, maintenance and upkeep of all road work in York County, except such work as performed by the permanent roads and bridge commission. [By a subsequent section of this Act, the permanent roads and bridge commission was abolished.] The said board and supervisor shall select for a period of two years a county engineer from a list to be recommended to them by the Chief Highway Commissioner of the State Highway Department of South Carolina. The said engineer shall be under the supervisor and said board and shall oversee and be in charge of all road work in York County, except such work as is performed at the direction of the York County permanent road and bridge commission'."

Section 33-1922 of the Code of Laws of South Carolina for 1952 provides as follows:

"County engineer and other help. The governing body of the county and the county supervisor shall select for a period of two years a county engineer from a list to be recommended to it by the Chief Highway Commissioner of the State Highway Department. The engineer shall be under the supervisor and the governing body and shall oversee and be in charge of all road work in the county. The engineer shall select and employ such help as is required for the necessary road work in the county. The salaries of

such employees shall not exceed the amount paid for like work by the State Highway Department."

Following the taking of office by the Supervisor and County Board of Directors, whose offices were created by Act No. 962 of the Acts of 1950, a county engineer was selected, pursuant to the provisions of said Act, and said county engineer entered into a contract with the Board of Directors for York County, for a term of employment to commence on August 15, 1952, and to extend to August 15, 1954, at a salary of $8,500.00 per annum. Appellant A. W. Bohlen was selected as such county engineer after having been recommended by the Chief Highway Commissioner of the South Carolina State Highway Department.

It is apparent that appellant Bohlen and four of the members of the Board of Directors of York County had certain differences which are unimportant for a decision in this case, and the Board attempted to discharge Bohlen as county engineer on November 4, 1953, but shortly thereafter the Board rescinded its action.

The contract of employment entered into between the York County Board of Directors and appellant Bohlen expired on August 15, 1954; however, embodied in Section 14 of the York County Supply Bill for 1954 is the following proviso:

"Provided, the present county engineer shall continue to serve under the terms and conditions of his present contract and until his successor has been selected and qualifies in full compliance with the York County Board of Directors Act."

In August, 1954, the four members of the York County Board of Directors, who had become dissatisfied with Bohlen as county engineer, conferred with the Chief Highway Commissioner of the State Highway Department, Mr. C. R. McMillan, with a view to recommending an engineer qualified to replace Bohlen, resulting in Mr. McMillan, by letter dated September 7, 1954, recommending to the York Board of Directors respondent J. Ben White as being quali-

fied to fill the position of county engineer for York County; thereafter, at a regular meeting of the Board of Directors for York County, held on September 8, 1954, with the entire membership of the Board of Directors present, respondent J. Ben White was selected county engineer for York County by a vote of four of the five County Directors. The other County Director voted against such selection, and the supervisor failed to concur in that he abstained from voting.

Pursuant to the Resolution of the Board of Directors for York County, selecting respondent J. Ben White county engineer for York County, a contract was entered into between the County Board of Directors for York County and respondent White for a term to commence on September 15, 1954, and to expire on September 15, 1956, unless appellant Bohlen should resign as county engineer for York County prior to September 15, 1954, in which case respondent White's term of employment was to commence simultaneously with the resignation of appellant Bohlen and to continue for a period of two years from the date when he accepted such employment. This contract was executed by the four members of the Board of Directors who voted in favor of the Resolution selecting respondent White county engineer and by respondent White but not by the dissenting member of the Board and the supervisor. Almost immediately thereafter this action was commenced.

Judge Brailsford issued his Order on November 23, 1954, declaring respondent J. Ben White to be the lawfully selected county engineer for York County pursuant to the Resolution of the Board of Directors as of September 8, 1954. From this Order appellants appealed, taking the position, among others, that respondent J. Ben White was not lawfully selected and contracted with by the Board of Directors for York County, in that the provisions of the Act require the approval of both the Board of Directors and the supervisor and that said supervisor had failed and refused to concur in the acts of the majority of the Board of Directors, thereby rendering such acts void and of no effect.

All rules of statutory construction are servient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used which must be construed in the light of the intended purpose. *Greenville Enterprise v. Jennings,* 210 S. C. 163, 41 S. E. (2d) 868, and the words used must be given their plain meaning, *McCollum v. Snipes,* 213 S. C. 254, 49 S. E. (2d) 12.

Both Act No. 962 of the Acts of 1950 and Section 14-3604 of the Code of Laws of South Carolina for 1952 provide that the county supervisor shall act in conjunction with the County Board of Directors except with respect to such powers, duties, responsibilities and control as may be delegated either to the supervisor, to the County Board of Directors or to individual members thereof. The selection of a county engineer for York County does not fall within the exceptions listed.

The legal meaning of the word "conjunction" is variously defined as a joining or meeting of individuals or of distant things; a union; a connection; a combination; an association; in union with; cooperating with; combined with; joining together with. *Highland v. Empire Nat. Bank of Clarksburg,* 114 W. Va. 473, 172 S. E. 544; *In re Stewart's Estate,* 138 Misc. 866, 248 N. Y. S. 171.

The pertinent portion of Section 33-1922, heretofore referred to, provides under the heading of County Engineer and other help:

"The governing body of the county and the county supervisor shall select for a period of two years a county engineer from a list to be recommended to *it* by the Chief Highway Commissioner * * *." (Emphasis ours.)

Reference to the original Act, No. 962 of 1950, reveals that the correct wording was:

" 'The said board and supervisor shall select for a period of two years a county engineer from a list to be recommended to *them* by * * *.' " (Emphasis ours.)

It is apparent therefore that in codifying this Section the word "them" was changed to "it." The use of the plural in the original Act with reference to the two entities is of greater significance to this Court in its efforts to arrive at the intention of the legislative body in passing the Act than the change to the singular in the codification of the Act. Of interest also is the fact that throughout the Act such terms as "the board and supervisor" are used at certain places and different expressions used at other places with reference to the purposes sought to be accomplished by the Act.

Perhaps the most significant phrase in the entire Act with reference to the question at hand is the use of the phrase " '*or a majority thereof*' " (emphasis ours), Section 4895(8) with reference to the powers to open, relocate roads, etc., reads:

" 'The county supervisor and board of directors, *or a majority thereof,* [emphasis ours] shall have the right and the power to open up any roads, relocate, discontinue or change location of old ones.' "

Section 4895(7) (a) which has to do with other appointments states in part:

" '* * * except those delegated in separate acts, and they, *or a majority thereof,* [emphasis ours] shall appoint its clerk, superintendent and assistant superintendent of the county home and county physician. * * * ' "

The county engineer not being listed along with these positions to be filled by a majority is strong indication that it was not the intention of the legislative body that such position should be so filled but that the two entities, the Board of Directors and the supervisor, each acting in conjunction with the other should make such appointment; otherwise, it would have been a simple matter to have listed this position along with the others to be filled by " 'a majority thereof' ". The wording of the statute "The governing body of the county *and* the county supervisor shall * * *"

(emphasis ours) connotes the existence of two separate entities who in order to exercise the powers delegated to them under the statute must of necessity reach an agreement, the one acting in addition to and in conjunction with the other as the word "and" connotes something in addition to that which has preceded, the elements which are connected necessarily being grammatically co-ordinate. *Burke v. Southern Pac. R. Co. of California,* D. C. Cal., 222 F. 97. See also, *Carter v. Keesling,* 130 Va. 655, 108 S. E. 708, wherein the word "and" when used in a Will with respect to the testator's son and daughter was held to mean "and also".

The foregoing is in line with the interpretation of other statutes by this Court. In *Sample v. Bedenbaugh,* 158 S. C. 496, 155 S. E. 828, 829, the Court citing *Utsey v. Charleston, etc. R. R. Co.,* 38 S. C. 399, 17 S. E. 141, in construing Section 382 of the 1922 Code of Civil Procedure for South Carolina which relates to the place of trial and provides in part:

"(3) When the convenience of witnesses *and* the ends of justice would be promoted by the change." (Emphasis ours.)

stated:

"It is essential to the support of a motion to change the place of trial, based upon the grounds just stated [for the convenience of witnesses and the promotion of the ends of justice], to establish by competent evidence the existence of both conditions. It is not sufficient to show that the mere convenience of the witnesses will be promoted by the change or the ends of justice will be thereby promoted, but the circuit judge should be controlled in the exercise of his judicial discretion by the plain words of the statute, and both requirements of the same must be met." See also *Patterson v. Charleston & W. C. Ry. Co.,* 190 S. C. 66, 1 S. E. (2d) 920; *Smith v. Atlantic Coast Line R. Co.,* 218 S. C. 481, 63 S. E. (2d) 311; *Landrum v. State Highway*

*Department,* 168 S. C. 139, 167 S. E. 164; and *Simmons v. Cohen* and *Mascola, S. C.,* 88 S. E. (2d) 679.

For the foregoing reasons, we are of the opinion that the contract of employment entered into between a majority of the County Board of Directors and J. Ben White without the acquiescence of the supervisor was without authority of law and therefore void; that the Order appealed from should be reversed and set aside; and it is so ordered.

Reversed.

BAKER, C. J., and STUKES, OXNER and LEGGE, JJ., concur.