0878

Peter HAIRSTON, Respondent v. CAROLINA WHOLESALE
FURNITURE CO., d/b/a Farena Furniture Co., Appellant.

(353 S. E. (2d) 701)

Court of Appeals

*Capers G. Barr, III* of *Barr, Barr and McIntosh,* Charleston, *for appellant.*

*Gedney M. Howe, III* of *Gedney M. Howe, III, P. A.,* and *Leonard L. Long, Jr.,* and *Stephen A. Spitz,* both of *Long, Smith and Jordan,* Charleston, *for respondent.*

Heard Dec. 17, 1986.

Decided Feb. 9, 1987.

BELL, Judge:

Dr. Peter Hairston brought this action in magistrate's court to eject his tenant, Carolina Wholesale Furniture Co., for failure to pay rent when due. The jury returned a verdict in favor of Carolina Wholesale, and the magistrate affirmed. On appeal to the circuit court, the judge reversed the magistrate and issued an order of ejectment against Carolina Wholesale. Carolina Wholesale appeals. We affirm the circuit court order.

In 1978, Carolina Wholesale entered into a written agreement to lease a commercial warehouse from Dr. Hairston for five years, with an option to renew for six additional five-year terms. The monthly rent of one thousand nine hundred sixty dollars is "payable in advance" to Read & Read, Inc., Dr. Hairston's agent, and "due on the 15th day of each month." In addition, Carolina Wholesale is responsible for a pro rata share of any increase in property taxes during the term of the lease. The lease contains the following late payment provision:

> 22. Tenant agrees: That Tenant will promptly pay said rent on or before the times stated above, and if any part of the rent shall remain due and unpaid after the same shall become due and payable, this lease shall be in default and Landlord shall have the option of declaring the balance of the entire rent for the entire term of this lease to be immediately due and payable ... or elect to evict Tenant and terminate this lease; however, Landlord reserves the right, at Landlord's sole option, to reinstate this lease upon Tenant's payment of the rent due plus ten percent (10%) late charge.

The lease also recites "time is the essence of all the terms and provisions of this lease." Carolina Wholesale has operated a retail furniture store on the leased property since 1978, having exercised its renewal option at the end of the first five-year term.

This dispute arises from the circumstances surrounding the June 1984 rent payment. Carolina Wholesale's bookkeeper mailed the monthly rent payment on the eighth of that month, but inadvertently misaddressed the envelope so that the payment never reached its destination. That same day, Read & Read mistakenly sent Carolina Wholesale a notice of past due rent, which purported to charge a late fee of one hundred ninety-six dollars. Enclosed with the notice was a letter informing Carolina Wholesale it owed an additional $271.26 for increased property taxes in 1983.

On June 19, Read & Read, who had as yet received no rent payment for June, sent Carolina Wholesale a letter terminating the lease and instructing Carolina Wholesale to vacate the property. The following day, Carolina Wholesale's attorney spoke on the telephone with Emerson Read, Jr., one of the partners in Read & Read. They discussed Carolina Wholesale's pro rata share of the 1983 property tax increase, but no mention was made of the default or the termination letter. After receiving the termination letter, Carolina Wholesale immediately mailed Read & Read a replacement check for the rent, along with payment for the increased property taxes. When Read & Read received the checks on June 22, they returned them to Carolina Wholesale.

Dr. Hairston filed an application in magistrate's court to eject Carolina Wholesale for failure to pay rent when due. The matter was tried before a magistrate and a jury, and the magistrate affirmed the jury's verdict in favor of Carolina Wholesale.

Dr. Hairston appealed to the circuit court. The circuit judge reversed the magistrate's order and issued a warrant of ejectment. He found the parties had negotiated and bargained for the lease terms, which unequivocally require prompt payment of rent. He concluded, therefore, Carolina Wholesale was in default and Dr. Hairston was entitled to terminate the lease. The judge further found there had been no waiver of Dr. Hairston's right to terminate the lease for failure to pay the rent when due.

Carolina Wholesale contends the circuit judge erred in failing to consider its equitable defenses and in finding Dr. Hairston had not waived the right to terminate the lease.

## I.

First, Carolina Wholesale contends the circuit judge should have exercised his equitable jurisdiction to prevent a forfeiture of its rights under the lease. Carolina Wholesale argues it would be inequitable to terminate a lease when the tenant's failure to pay the rent when due results from "good faith inadvertence."

If we were to accept Carolina Wholesale's reasoning, tenants could be evicted only if their failure to pay rent were willful. Such a rule is contrary to the established law of this State. Section 27-37-10, Code of Laws of South Carolina, 1976, authorizes ejectment of a tenant for failure to pay the rent when due. In addition, our courts have frequently upheld the eviction of tenants who did not pay their rent on time. *See, e.g., Vacation Time of Hilton Head Island, Inc. v. Kiwi Corp.*, 280 S. C. 232, 312 S. E. (2d) 20 (Ct. App. 1984); *Wright v. Player*, 233 S. C. 223, 104 S. E. (2d) 289 (1958); *Bowers v. Lide*, 191 S. C. 505, 5 S. E. (2d) 283 (1939); *Trakas v. Mitchell*, 111 S. C. 160, 97 S. E. 245 (1918).

We agree with the circuit judge that the agreement of the parties to this lease was clear. The lease affords Dr. Hairston the option to evict Carolina Wholesale and terminate the lease if any part of the rent is not paid by the fifteenth of the month. The lease also stipulates time is of the essence as to all the terms. As the circuit judge found, the lease "means what it says and says just what it means."

We also concur in the judge's finding that Carolina Wholesale was aware of the importance of paying the rent on time. Although the parties used a "form" lease, the individual terms were specifically negotiated. The executed lease contains numerous typewritten and initialed changes. In addition, in 1983 a Carolina Wholesale employee prepared a memorandum for paying monthly bills which states that the rent "must NOT be later than 10th of month as they would love to cancel the lease." Further, Carolina Wholesale had paid the rent late on at least one prior occasion. At that time, Read & Read spoke with Carolina Wholesale's attorney and was assured future payments would never be late.

The misaddressed payment was ineffective to satisfy Carolina Wholesale's obligation to pay the rent by the fifteenth of the month. A creditor assumes the risk of nondelivery of mailed payments only if he authorizes remittance by mail and the payment is duly mailed and addressed. *Townsend, Crane & Co. v. Henry*, 43 S.C.L. (9 Rich.) 318 (1856). In this case, the payment was not properly addressed. When Carolina Wholesale failed to pay the rent by the required date, Dr. Hairston was entitled to terminate the lease and commence an eviction action under Section 27-37-10. Read & Read's letter to Carolina Wholesale constituted a clear termination of the lease. The late payment, mailed after receipt of the termination letter, did not affect Dr. Hairston's right of ejectment. The right to eject accrues upon default, and a landlord is under no obligation to accept a late rent payment. *Wright v. Player, supra.*

It is not this Court's function to rewrite agreements between parties. Carolina Wholesale agreed to the lease's terms and is now bound by them. We therefore hold the lease entitled Dr. Hairston to evict Carolina Wholesale upon failure to pay the rent by the fifteenth of the month.

## II.

Carolina Wholesale contends Dr. Hairston waived his right to elect to terminate the lease when Read & Read sent the overdue rent notice and elected to assess a late payment fee.

Waiver is an intentional relinquishment of a known right. *Edwards v. Rouse*, 351 S. E. (2d) 174 (Ct. App. 1986). When Read & Read erroneously sent the late payment notice on June 8, they elected to charge a late fee at that time based on a default they apparently believed had already occurred. Mailing of the notice evinced no intent to relinquish the right to elect a different remedy upon subsequent defaults. Consequently, Read & Read's assessment of a late fee on June 8 did not constitute a waiver of the right to terminate the lease for failure to pay the rent due on June 15.

Carolina Wholesale also asserts Emerson Read, Jr., waived the right to elect to terminate the lease when he spoke with Carolina Wholesale's attorney on June

20. Carolina Wholesale has failed to show why the phone conversation should be construed as an implied waiver of its right to terminate the lease. There is no evidence the parties discussed any subject other than the increased property taxes assessed in 1983. Carolina Wholesale's obligation to pay its share of those taxes arose because of its tenancy during 1983. Thus, Read's attempt to collect the money was in no way inconsistent with its election to terminate the lease for failure to pay the rent due on June 15, 1984.

We hold, therefore, that Dr. Hairston did not waive his right to elect to terminate the lease and evict Carolina Wholesale upon failure to pay the June rent when due.

For these reasons, the order of the circuit court is

Affirmed.

CURETON and GOOLSBY, JJ., concur.