23993

Alex KIRIAKIDES, Jr. and John Kiriakides, Appellants v. UNITED ARTISTS COMMUNICATIONS, INC., Respondent.

(440 S.E. (2d) 364)

Supreme Court

---

*Edward M. Woodward, Jr.* and *Mark A. King, Jr.*, *Woodward, Leventis, Unger, Daves, Herndon, and Cothran,* Columbia, *for appellants.*

*V. Clarke Price* and *James H. Cassidy, Love, Thornton, Arnold, and Thomason,* Greenville, *for respondent.*

Heard Nov. 3, 1993.

Decided Jan. 17, 1994.

HARWELL, Chief Justice:

Alex and John Kiriakides (Landlord) contend that the trial judge erred in refusing to terminate the remainder of United Artists Communications' (United Artists) lease after United Artists failed to pay a rent increase. We disagree and affirm.

## I. *Facts*

On January 15, 1976, Fairlane Litchfield Company Inc. entered into an agreement to lease a theater from Landlord until 1996. The lease was later amended to extend the term to 2016. Fairlane Litchfield assigned the lease to United Artists on May 15, 1987. In February 1988, Landlord discovered that United Artists had failed to pay a $365 per month rent increase[1] that took effect January 1, 1988 according to the terms of the lease. In May or June of that year, Landlord sent a letter to the local theater and to United Artists' office in New Jersey, the return address of all rent payments, rather than the New York address listed on the lease. Raymond Sohmer, the Administrative Assistant for United Artists, testified that he never received this letter in the New York office. United Artists continued to timely pay the amount due prior to the increase.

On February 9, 1989, Landlord sent a letter to United Artists Stating that if payment of the past due rent was not made within ten days, Landlord was going to "regretfully exercise our rights under the lease." The letter was received in the New Jersey office on February 16 and in the New York office on February 17. United Artists tried to contact Landlord concerning the exact amount of rent due. Thereafter, Landlord's lawyer informed United Artists of the amount of past rent owed. United Artists immediately sent Landlord the past due amount.

On March 3, 1989, the same day that United Artists mailed

---

[1] The monthly rent increased from $2,916.67 to $3,281.25.

the check for the past due amount, Landlord commenced this action for ejection by service of Summons and Complaint at United Artists' New Jersey office. United Artists answered, claiming that Landlord failed to serve notice of default as required by the terms of the lease and that termination of the lease would be inequitable. At trial, Landlord moved for a directed verdict claiming that the only reasonable inference to be drawn from the whole of the evidence was that the notice requirement had been met. The Trial judge denied the motion and the jury rendered a verdict for United Artists. On appeal, the Court of Appeals held that the trial judge erred in failing to direct a verdict in Landlord's favor because proper notice was given to United Artists as a matter of law. The Court of Appeals remanded for a determination whether forfeiture of the lease would be inequitable, 307 S.C. 72, 413 S.E. (2d) 850.

On remand, the trial judge denied the forfeiture of the lease and ejectment of United Artists, ruling that upon payment of any past due installment of rent, United Artists shall resume possession of the premises. Landlord appealed.

## II. *Discussion*

Landlord argues that because both the lease[2] and S.C. Code § 27-37-10 (1991) provide for termination of the lease if the tenant fails to pay rent when due, the trial judge erred in applying equitable principles to deny the forfeiture of United Artists' lease. We disagree.

Section 27-37-10 provides:

---

[2] Article 16 of United Artists' lease provides:

If the Lessee . . . fail[s] to make any payment of any installment of rent or other sum required to be paid by the Lessee . . . and if such default shall not be cured . . . within ten (10) days after written notice of such failure to make payment . . . the Lessor shall have the right at its election, then or at any time thereafter while such default or defaults shall continue, after Lessee's failure to cure such default or defaults as provided in this paragraph, to give the Lessee notice of the Lessor's intention to terminate this lease and all rights and privileges granted the Lessee hereunder, on a date specified in such notice. . . . In the event of termination of this lease as in this Paragraph provided, the Lessor shall have the right to repossess the leased premises and the improvements. . . .

[t]he tenant may be ejected upon application of the landlord or his agent when (a) such tenant fails or refuses to pay the rent when due or when demanded, (b) the term of tenancy or occupancy has ended or (c) the terms or conditions of the lease have been violated.

According to Landlord, section 27-37-10 and the terms of the lease would permit forfeiture no matter how trivial, inadvertent, nonprejudicial, or technical the breach.

All rules of statutory construction are subservient to the one that the legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *Bohlen v. Allen,* 228 S.C. 135, 89 S.E. (2d) 99 (1955). However plain the ordinary meaning of the words used in a statute may be, the courts will reject that meaning when to accept it would lead to a result so plainly absurd that it could not possibly have been intended by the Legislature or would defeat the plain legislative intention. *Stackhouse v. Rowland,* 86 S.C. 419, 68 S.E., 561 (1910). If possible, the court will construe the statute so as to escape the absurdity and carry the intention into effect. *Id.*

A majority of courts have concluded that a lease may not be forfeited for a trivial or technical breach even when the parties have specifically agreed that "any breach" gives rise to the right of termination. *See Foundation Dev. Corp. v. Loehmann's, Inc.,* 163 Ariz. 438, 445, 788 P. (2d) 1189, 1196 (1990). These courts note the sophistication and complexity of most business interactions and are concerned that the possibilities for breach of a modern commercial lease are virtually limitless. In their view, the parties to the lease did not intend that every minor or technical failure to adhere to complicated lease provisions could cause forfeiture. Therefore, the majority of courts hold that to justify forfeiture, the breach must be material, serious, or substantial. *Id.*

Landlord's interpretation of section 27-37-10 would lead to the absurd result that leases could be terminated for immaterial and trivial breaches. In our view, the Legislature enacted section 27-37-10 to give the lessor a right not recognized at common law, the right to terminate a

lease in the absence of a contractual provision. We do not find, however, that the Legislature intended this right to be unlimited. Therefore, we adopt the majority rule that the landlord's right to terminate is not unlimited and that the court's decision to permit termination must be tempered by notions of equity and common sense. *Id.* 163 Ariz. at 446, 788 P. (2d) at 1197. Accordingly, we hold that a forfeiture for a trivial or immaterial breach of a commercial lease should not be enforced.[3]

To determine whether a breach of a commercial lease is material, the Arizona Supreme Court in *Foundation Development* applied the *Restatement (Second) of Contracts* § 241 (1981). *Id.* Section 241 provides:

> In determining whether a failure to render or to offer performance is material, the following circumstances are significant:
> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
> (b) the extent to which the injured party can be adequately compensated [by damages] for the part of that benefit of which he will be deprived;
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances;
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

We adopt these standards for determining whether the breach of a commercial lease is trivial or immaterial and apply this analysis to the facts of the case.

---

[3] We overrule *Wright v. Player*, 233 S.C. 223, 104 S.E. (2d) 289 (1958); *Billips v. Hawkins*, 298 S.C. 435, 381 S.E. (2d) 210 (Ct. App. 1989); *Beard v. Ryder/P-I-E Nationwide, Inc.*, 292 S.C. 250, 355 S.E. (2d) 872 (Ct. App. 1987); and *Hairston v. Carolina Wholesale Furniture Co.*, 291 S.C. 371, 353 S.E. (2d) 701 (Ct. App. 1987) to the extent that they are inconsistent with this holding.

In an action in equity, tried by the judge without a reference, we may review all the evidence to determine the facts in accordance with our own view of the preponderance or greater weight of the evidence. *Georgia R.R. Bank and Trust Co. v. Doolittle*, 272 S.C. 249, 252 S.E. (2d) 556 (1979). United Artists presented evidence that the value of improvements to the leasehold it purchased from Litchfield after depreciation was $1.2 million and that the lease term would end in 2016. Landlord presented testimony that the fair rental value of the property for 1992 was $92,464 compared to the $59,379 United Artists was required to pay under the lease. The amount of past due rent that United Artists owed upon receipt of the notice amounted to $4,732. Landlord makes no claim of damage by the delay in payment.

As to subsections (a) and (b), we find that the only benefit Landlord reasonably could have expected was the past due rent which could be adequately compensated by damages. In applying subsection (c), we find that United Artists' damages, if the lease is forfeited, include the length of time remaining under the lease and the value of the improvements owned by United Artists. Additionally, we find that in considering subsection (d), United Artists has already tried to cure their default by sending a check to Landlord for the amount past due. Finally, in applying subsection (e), we find that United Artists' behavior comports with the standards of good faith and fair dealing. There is no evidence in the record that the breach was willful or in bad faith. To the contrary, the evidence shows that as soon as United Artists' accounting department received notice of default, it immediately tried to contact Landlord to ascertain the amount due. Accordingly, the record supports the trial judge's holding that United Artists breached its lease agreement with Landlord in such a manner that forfeiture would be inequitable. Our ruling renders it unnecessary to address Landlord's remaining exceptions.

For the foregoing reasons, the trial judge's ruling is

Affirmed.

CHANDLER, FINNEY, TOAL and MOORE, JJ., concur.