700 S.E.2d 255

**Margaret O'SHEA, Respondent,**

**v.**

**SOUTH CAROLINA LAW ENFORCEMENT DIVISION, Appellant.**

**No. 4739.**

Court of Appeals of South Carolina.

Heard May 19, 2010.
Decided Sept. 15, 2010.

Attorney General Henry McMaster, Assistant Attorney General J.C. Nicholson, III, Assistant Attorney General Natalie Armstrong, all of Columbia, for Appellant.

Christian Stegmaier, of Columbia, for Respondent.

THOMAS, J.

The South Carolina Law Enforcement Division (SLED) appeals an order from the Administrative Law Court (ALC) finding (1) Respondent Margaret O'Shea did not have to be licensed as a private investigator in order to work as a court appointed mitigation specialist on death penalty cases and (2) the files in O'Shea's possession were not subject to SLED's review because they were protected by the work product doctrine. We affirm.

## FACTS AND PROCEDURAL HISTORY

In 2001, following a thirty-year career as an investigative reporter covering high profile stories and court cases, O'Shea began working as a death penalty mitigation specialist. Based

on advice that a professional license would be a good credential for obtaining work in her new field, she applied to SLED for a private investigator's license.

Currently, there are about six individuals doing death penalty mitigation work, four or five of which are licensed as private investigators. According to O'Shea, her work as a death penalty mitigation specialist includes: compiling social histories, gathering documents and other information, interviewing family members of clients and other individuals, and analyzing the material she acquires to help attorneys for capital defendants develop strategies. Although her work is geared toward the penalty phase of a capital case, she occasionally participates in the guilt phase. She rarely, if ever, testifies.

O'Shea described herself as "self-employed," with death penalty mitigation work as her primary job. She is usually contacted directly by an attorney desiring her services. If she agrees to take the case, counsel then requests the presiding judge to appoint her. She charges by the hour according to the fee approved by the presiding judge. The approved fees are paid by the Office of Indigent Defense. It is undisputed that O'Shea does not work exclusively for any one attorney or law firm. Nevertheless, she considers herself part of each defense litigation team that uses her services.

In 2007, after she had worked as a death penalty mitigation specialist for about six years, O'Shea was unable to renew her private investigator's license because of financial problems resulting mainly from medical problems that prevented her from working. As a result, her license lapsed on September 16, 2007. When she was able to resume working, she did not renew her license; however, she notified SLED that she was working on only one case and was not gathering any new information.

Later, however, a SLED agent contacted O'Shea to arrange an inspection of her records, explaining this was a routine procedure that should have been done every two years.[1] O'Shea initially intended to comply with the request until

---

1. In its brief, SLED indicates that, pursuant to its protocol, a lapsed license automatically triggers a field visit by a SLED regulatory agent to the private investigator's office to inspect the investigator's file.

SLED demanded access to all of her records for the past year. O'Shea refused to comply with this demand because of the volume of paper involved. She contacted the attorneys with whom she had worked in the past year, all of whom took the position that the files in her possession belonged to counsel and were protected by the work product doctrine. O'Shea offered to provide invoices with names redacted, but SLED did not respond to this offer.

On October 24, 2007, O'Shea applied to renew her license. SLED refused to authorize the renewal for several reasons, among them O'Shea's prior refusal to allow an inspection of her records. In December 2007, O'Shea, now represented by counsel, filed this action in the ALC, seeking an order directing SLED to renew her license or, in the alternative, an order declaring that death penalty mitigation specialists were not subject to the licensure requirements that applied to private investigators.

The ALC heard the matter on April 24, 2008, and issued a final order on June 4, 2008, holding (1) O'Shea was not required to be licensed as a private investigator in order to work as a death penalty mitigation specialist; (2) regardless of whether any licensing requirements applied to O'Shea, the files in her possession were protected by the attorney work product doctrine; (3) SLED needed to obtain a court order to inspect an individual's files while investigating whether that person is operating a private investigation business without a license if the subject asserts the files are privileged; and (4) because O'Shea did not need a private investigator's license to work as a death penalty mitigation specialist, there was no need for SLED to review the files in her possession. Following an unsuccessful attempt to alter or amend the ALC's decision, SLED filed its notice of appeal.

## ISSUES

I.  Did the ALC err in finding O'Shea did not have to be licensed as a private investigator because she worked as a death penalty mitigation specialist?

II. Did the ALC err in holding O'Shea's files were entitled to protection under the work product doctrine?

## STANDARD OF REVIEW

The standard of review for judicial review of a final decision of an ALC is set forth in section 1–23–610 of the South Carolina Code (Supp.2009). Under Paragraph (B) of this section,

The review of the administrative law judge's order must be confined to the record. The court may not substitute its judgment for the judgment of the administrative law judge as to the weight of the evidence on questions of fact. The court of appeals may affirm the decision or remand the case for further proceedings; or, it may reverse or modify the decision if the substantive rights of the petitioner have been prejudiced because the finding, conclusion, or decision is:

(a) in violation of constitutional or statutory provisions;

(b) in excess of the statutory authority of the agency;

(c) made upon unlawful procedure;

(d) affected by other error of law;

(e) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or

(f) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

## LAW/ANALYSIS

### I. Licensing Requirements

SLED challenges the ALC's ruling that O'Shea did not need to be licensed as a private investigator in order to work as a death penalty mitigation specialist, arguing the court misinterpreted portions of the statutory law on licensing and registration requirements for private investigators. We disagree.

Chapter 18 of Title 40 of the South Carolina Code is entitled "Private Security and Investigation Agencies." Under this chapter, "[a] person who desires to operate a private investigation business in this State must apply for a Private Investigation License from SLED and pay an annual license fee which must be set by SLED regulation." S.C.Code Ann. § 40–18–70(A) (Supp.2009). Under section 40–18–140(3), however, the provisions of Chapter 18 do not apply to "an attorney-at-law while in the performance of his duties."

The ALC relied on section 40–18–140(3) in ruling O'Shea did not need to be licensed as a private investigator in order to

work as a death penalty mitigation specialist. Citing ABA Guidelines, law review articles, and other authority, the court noted (1) a mitigation specialist is recognized as an essential component of a capital defense team and (2) the mitigation specialist's only role is to assist attorneys in the defense of death penalty cases. Based on this recognition, the ALC reasoned that in her work as a death penalty mitigation specialist, O'Shea was acting as an agent of the attorney representing the capital defendant and her performance would be monitored by extensive judicial oversight. Though acknowledging O'Shea's work was on a case-by-case basis, the ALC nevertheless found she was no less an agent of defense counsel, who requested her appointment, than a salaried paralegal, investigator, or associate. Based on the finding that O'Shea was acting as an agent for defense counsel while performing her duties as a mitigation specialist, the ALC found she was exempt from the licensing requirements of Chapter 18 pursuant to section 40–18–140(3).

In challenging this ruling, SLED argues only that the ALC failed to consider section 40–18–80(D) of the South Carolina Code (Supp.2009).[2] This paragraph provides as follows:

A person is exempt from the registration and licensing requirements of *this section* when the employer is not a private investigation business and the employee is exclusively employed by that employer. The exemption from registration and licensing requirements applies only to work performed for the exclusive employer. If the person, during the period of his exclusive employment, performs or is available to perform investigative work for a different employer or more than one employer, the person must obtain a private investigation license or registration pursuant to *this section*.

---

2. During oral argument, counsel for SLED acknowledged SLED did not dispute the ALC's determination that section 40–18–140(3) exempts not only attorneys but also their employees from licensing requirements and further conceded that an investigator who worked for only one law firm did not need a private investigator's license. Moreover, we agree with the ALC that the legislature has recognized, at least implicitly, that an individual performing investigatory duties under the supervision of an attorney does not need a private investigator's license. *See* S.C.Code Ann. § 40–18–70(E)(9)(b) (Supp.2009) (allowing SLED to issue a private investigator's license to a person who "has at least three years' experience . . . as an investigator for a law firm . . .").

(Emphasis added.) A careful examination of section 40–18–80, however, reveals there are no licensing requirements whatsoever within that section. Therefore, under section 40–18–80(D), an individual performing private investigation work for a single employer is exempt from registration requirements. The question before us is one of licensing and not registration. This section is therefore not applicable here.

The inclusion of the term "licensing requirements" in the first sentence of section 40–18–80(D) could suggest the legislature intended that the exemption in section 40–18–80(D) would apply to registration and licensing requirements within Chapter 18 rather than within only section 40–18–80. Nevertheless, the appearance of the word "chapter" elsewhere in several statutes within Chapter 18—including section 40–18–80 itself—indicates otherwise, i.e., that the legislature intended for the exemption in section 40–18–80 to be only from whatever registration or licensing requirements were provided within that particular section rather than other sections within Chapter 18. Because, as we have stated earlier, section 40–18–80(D) includes only registration provisions, it follows that, regardless of whether it overrides any exemption O'Shea could claim under section 40–18–140(3), it does not subject her to any licensing requirements.

In holding section 40–18–80(D) does not subject individuals who perform investigatory work for multiple law firms to any specific licensing requirements, we are following the established principle that "[w]here [a] statute's language is plain and unambiguous, and conveys a clear and definite meaning, the rules of statutory interpretation are not needed and the court has no right to impose another meaning." *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). Here, although section 40–18–80(D) references licensing requirements within the section, we do not believe the incongruity between this reference and the absence of any such requirements within the defined language presents a sufficient basis to reject the plain meaning of the statute in its present form on the ground that it would lead to an absurd result. *See Kiriakides v. United Artists Commc'ns*, 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994) (stating courts will reject the plain meaning of the language in a statutory provision "when to accept it would lead to a result so plainly absurd that it could

not possibly have been intended by the Legislature or would defeat the plain legislative intention").

## II. Work Product Doctrine

The issue of whether O'Shea's files are protected by the work product doctrine arose in the context of whether they were subject to inspection by SLED as part of O'Shea's application to have her private investigator's license reinstated. Because we have determined that O'Shea is not required to be licensed as a private investigator in order to work as a death penalty mitigation specialist, a ruling on this issue is not necessary in deciding this appeal. *See Futch v. McAllister Towing of Georgetown*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (stating an appellate court need not address remaining issues when a decision on a prior issue is dispositive).

### CONCLUSION

We affirm the ALC's determination that O'Shea is not required to be licensed as a private investigator in order to work as a death penalty mitigation specialist. Because this affirmance renders any ruling on the applicability of the work product doctrine unnecessary to the resolution of this appeal, we decline to address this issue.

**AFFIRMED.**

FEW, C.J., and PIEPER, J., concur.